(1 App. Div. 507.)

BAKER TRANSFER CO. v. MERCHANTS' REFRIGERATING & ICE MANUFACTURING CO.

(Supreme Court, Appellate Division, First Department. February 7, 1896.)

CONTRACTS—CONSTRUCTION—INTENTION OF PARTIES—IMPLIED COVENANTS.

In an action on an agreement, it appeared that the agreement was signed and sealed by both parties; that it stated that defendant was engaged in the manufacture of ice, and would put out from 75 to 100 tons a day; that plaintiff should take the ice, and, for a stated compensation, deliver it to various customers; that plaintiff should provide suitable horses, harness, and wagons, which defendant might purchase after one year; that, if plaintiff failed to deliver the ice, defendant might have it delivered, and charge plaintiff any excess beyond the amount paid plaintiff for like services. *Held*, that a covenant to furnish the ice for plaintiff would be implied on the part of defendant.

Appeal from circuit court, New York county.

Action by the Baker Transfer Company against the Merchants' Refrigerating & Ice Manufacturing Company on a written agreement for the delivery of ice. From a judgment dismissing the complaint for insufficiency of facts, plaintiff appeals. Reversed.

The action was brought upon a written agreement of the parties, wherein it was provided that the defendant was engaged in the manufacture of arti-

ficial ice in the city of New York, and would have an output of from 75 to 100 tons per day, and the intention was to dispose of this ice, and deliver the same to various customers; that the plaintiff was engaged in forwarding and trucking merchandise, and agreed to take such ice from defendant's plant, and deliver the same to various persons in the city, and, when requested, to store the same in ice boxes or bunkers situated in the buildings of said customers, and to furnish the necessary new wagons, properly painted and lettered, with good horses and harnesses, together with the necessary appliances and proper help sufficient to deliver the said ice with reasonable dispatch, and that the defendant would pay the plaintiff on the 1st day of each month for the ice that he delivered during the previous month, at the rate per ton therein specified, and that, in case of the failure of the plaintiff properly to deliver the ice as therein agreed, the defendant should give written notice to the plaintiff, and thereafter, if the plaintiff was unable to perform the work properly, the defendant should have the right to arrange for the delivery of said ice, and charge any excess of expense over the prices therein agreed upon to the plaintiff; that the agreement was to continue for two years from May 1, 1892, and the defendant should have the option of buying the horses, trucks, harnesses, etc., from the plaintiff after the first year of the term of the agreement. This agreement stated it was made between the parties, and it was signed and sealed by both of them. The complaint set out this agreement, and further alleged that, pursuant to the agreement, the plaintiff purchased the necessary horses, harnesses, trucks, and appliances, and fully prepared itself to receive and deliver the ice, and entered upon the performance of the agreement,—and that there were, and ever since had been, customers sufficient to take the 100 tons of ice daily,—and that the plaintiff was fully equipped and prepared to receive and deliver the ice, was ready to do so, and so presented itself to the defendant; that on the 1st day of May, 1892, it began to receive and deliver the ice, and continued to do so up to January 1, 1893, but though there were customers for at least the 100 tons of ice daily, and although the defendant had agreed to produce 75 to 100 tons a day for such delivery, he failed to do so, and only produced on an average about 25 tons per day for such delivery, and on or about January 1, 1893, stopped producing any ice for such delivery, and the plaintiff was thereafter unable to get any ice for delivery, and so the defendant was guilty of a breach of the agreement, and by reason thereof the plaintiff suffered damages in the sum of $41,550, for which it sought to recover judgment at the trial. Before any evidence was taken the defendant moved for a dismissal of the complaint, on the grounds: (1) That while the agreement obliged the plaintiff to receive the ice manufactured by the defendant, for delivery, and to deliver the same to customers, there was no corresponding obligation imposed on the defendant by the agreement to deliver any ice to the plaintiff, and the plaintiff could not recover damages for the failure of the defendant to deliver that which the contract did not require it to deliver; (2) that the agreement was void for want of mutuality, there being no obligation on the part of the defendant to deliver ice to the plaintiff; (3) that the agreement was void for uncertainty, for the reason that no definite quantity of ice was specified. The court granted the motion, and the plaintiff excepted to such ruling. From the judgment entered on this decision, this appeal is taken.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and INGRAHAM, JJ.

Almet F. Jenks, for appellant.

Theron G. Strong, for respondent.

WILLIAMS, J. The question raised by this appeal is whether, under the facts alleged in the complaint, a covenant should be implied on the part of the defendant to furnish the ice for delivery to customers. There is no uncertainty in the agreement as to the quantity of ice. It was 75 to 100 tons daily; at least 75 tons.

The general rules of the law relating to implied covenants are

well settled and have been frequently stated by the courts. Booth v. Mill Co., 74 N. Y. 21; Jugla v. Trouttet, 120 N. Y. 27, 23 N. E. 1066; Genet v. Canal Co., 136 N. Y. 608, 609, 32 N. E. 1078; Jacquin v. Boutard, 89 Hun, 437, 35 N. Y. Supp. 496; and cases therein referred to.

In Booth v. Mill Co., supra, it was said by Allen, J.:

"There is no particular formula of words or technical phraseology necessary to the creation of an express obligation to do or forbear to do a particular thing or perform a specific act. If, from the text of an agreement and the language of the parties, either in the body of the instrument or in the recital or references, there is manifested a clear intention that the parties shall do certain acts, courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for nonperformance of which an action of covenant or assumpsit will lie."

In Jugla v. Trouttet, supra, Bradley, J., said:

"Where any act of the parties, or either of them, is essential to carry out the intention of the parties appearing by the provisions of the contract, the stipulation for the performance of such act will be deemed within its provisions as effectually as if actually expressed."

And in Genet v. Canal Co., supra, Finch, J., said:

"I know very well that implied promises should be cautiously, and not hastily, raised. They always exist where equity and justice require the party to do or refrain from doing the thing in question; where the covenant on one side involves some corresponding obligations on the other; where, by the relation of the parties and the subject-matter of the contract, a duty is owing by one not expressly bound by the contract to the other party, in reference to the subject of it. In this court we have thrown some safeguards about the doctrine to secure its prudent application, and have said that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it, and that it is to be raised only to enforce a manifest equity or reach a result which the unequivocal acts of the parties indicate that they intended to effect."

In Jacquin v. Boutard, supra, which was an action brought to recover damages for a breach of a contract whereby the defendants employed the plaintiff in their business, among other things, to sell goods as their agent, the general term of the supreme court in this department held that, although there was no express promise in the contract that the defendants should furnish the plaintiff with samples and price lists of their goods, yet such promise should be implied from the facts and circumstances surrounding the execution of the contract and the conduct of the parties thereunder; citing Booth v. Mill Co. and Genet v. Canal Co., supra, and other cases. Parker, J., said:

"The failure of this promise to appear in the contract was not an intentional omission, but a mere inadvertence; and, while the courts hesitate to imply promises in formal contracts, they should do so where otherwise the manifest intention of the parties would be defeated."

These are some of the latest expressions of the courts upon this subject, and may well be relied upon as correctly stating the principles to be applied in this case; and, in view of these principles, we think the trial court was clearly in error in holding that no covenant on the part of the defendant to furnish the ice to the plaintiff could be implied. The agreement in form was mutual, and signed and

sealed by both parties.    It is stated that the defendant was engaged in the manufacture of ice; and would have an output of from 75 to 100 tons per day, and that the intention was to dispose of this ice, and deliver the same to various customers.    It further provided that the plaintiff should take the ice from the defendant's plant, and deliver it to the customers; that the plaintiff should incur great expense in providing horses, wagons, harnesses, etc., in preparation for the special work of taking and delivering the ice, and, if plaintiff failed promptly to take and deliver the ice as agreed, defendant might itself arrange to have it delivered, and plaintiff should be liable to any excess in the expenses thus incurred over and above the prices agreed to be paid plaintiff under the agreement; that the price to be paid plaintiff for such delivery was 50 cents and 75 cents per ton, and the term of the agreement was two years, with the option to the defendant after one year to purchase the horses, wagons, etc., from the plaintiff, and thus, by implication, terminate the agreement. The intention of the parties is very apparent from the language of the agreement itself.    The defendant was to manufacture 75 to 100 tons of ice per day, and plaintiff was to take and deliver all of it to customers.    There is no suggestion in the agreement, express or implied, that the plaintiff should take or deliver less than the whole amount of ice manufactured.    How could such an intention be carried out unless the defendant furnished the ice to plaintiff so to deliver.    The furnishing of the ice by the defendant was essential to carry out this intention, and therefore the court should imply a covenant to perform this act.    The covenant on the part of the plaintiff involved a corresponding obligation on the part of the defendant to furnish the ice.    In view of the relations of the parties and the subject-matter of the contract, a clear duty was owing on the part of the defendant to deliver the ice.    This was understood and assumed. Upon no other hypothesis is it conceivable that the plaintiff would have covenanted as he did.    The covenant must be implied to reach a result which the unequivocal acts of the parties indicated that they intended to effect.    Sufficient reasons thus appear why the covenant contended for should be implied in this agreement, and it does not seem to be necessary further to consider the facts or discuss the law of the case.

Our conclusion is that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.