W. P. FULLER & Co., Respondent, *v.* WENZEL SCHRENK and Others, Appellants.

*Foreign corporation, not licensed to transact business in the State of New York — the fact must be alleged as a defense — contemporaneous oral agreement to vary a written contract — motion for a verdict by both parties — effect thereafter of a general request to go to the jury.*

The objection that a foreign corporation, which has brought an action in the State of New York upon a contract made by it in that State, has not procured the certificate, made by section 15 of the General Corporation Law (Laws of

1892, chap. 687) a condition precedent to the maintenance of such an action, is an affirmative defense and is not available unless pleaded.

A contract providing, "It is hereby agreed that in consideration of W. P. Fuller & Co. buying all their supply of German Mirror Plates from the United Bavarian Looking Glass Works for a period of six months from this date, the said United Bavarian Looking Glass Works agree" to sell certain mirrors at specified prices, does not lack mutuality.

In an action brought by the vendee named in the contract against the vendor to recover damages for the latter's refusal to supply mirror plates ordered by the vendee within six months from the date of the contract, the vendee is not entitled to have the contract reformed by inserting a clause limiting the amounts the vendee could order to a "quantity not exceeding their average purchases in any previous season of six months," upon alleging that the vendor's representative stated that such was the meaning of the words, "all their (plaintiffs') supply of German Mirror Plates," especially where the vendors performed the contract for a period of four months and did not repudiate it until it became unprofitable.

The contract being complete and the obligations of the contracting parties being plainly and specifically set forth, the vendor is not entitled to prove a contemporaneous oral agreement that the vendee would not order a greater quantity than he had been in the habit of buying from the vendor in any previous seasons of six months.

Where each party to an action makes a motion for the direction of a verdict, a general request to submit the case to the jury is not sufficient to raise the question that the amount of damages should have been submitted to the jury because the only evidence upon that point was given by an interested witness.

Appeal by the defendants, Wenzel Schrenk and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of July, 1900, upon the verdict of a jury rendered by direction of the court.

The contract sued upon was made in the State of New York.

*John J. Gleason*, for the appellants.

*George S. Hamlin*, for the respondent.

Ingraham, J.:

The plaintiff, a foreign corporation, sought to recover in this action the damages sustained by the breach of a contract to sell "German Mirror Plates" made with the defendants, copartners, doing business under the firm name of "United Bavarian Looking Glass Works." The contract in question was dated February 8, 1897, and was as follows:

" It is hereby agreed that in consideration of W. P. Fuller & Co. buying all their supply of German Mirror Plates from the United Bavarian Looking Glass Works, for a period of six months from this date, the said United Bavarian Looking Glass Works agree to the following : To sell delivered F. O. B. New York" certain plain and beveled mirrors at prices named. The execution of this contract was admitted and the defendants filled all orders given by the plaintiff up to the 15th of June, 1897. Upon the fifteenth of June and subsequent days the plaintiff sent to the defendants certain additional orders which the defendants refused to fill, the last order being dated July 19, 1897 ; and it is to recover for a failure to fill these orders that this action is brought. The plaintiff's manager testified as to the giving of these orders ; that all of the goods ordered of the defendants had been actually resold by the plaintiff, except a small portion ; that these amounts ordered by the plaintiff were for the supply of the plaintiff for the six months subsequent to the date of the contract ; that prior to the time these orders were given most of the goods ordered from the defendants had been sold and had to be delivered as soon as received, and that such sales which had been made by the plaintiff were not outside of the ordinary business of the plaintiff's house. The court directed a verdict for the plaintiff for the difference in the value of the articles ordered and the market price at the time of the failure of the defendants to perform their contract, to which the defendants excepted. There was a general request by the defendants to go to the jury, but no question to be submitted to the jury was specified.

The defendants moved to dismiss the complaint upon two grounds : *First*, that the plaintiff cannot recover because it has not been shown that this plaintiff, a foreign corporation, has complied with the requirements of law permitting it to do business in this State, or to bring an action in this State ; and, *second*, that there was no mutuality in the contract, as the plaintiff was not bound to give an order during the whole six months. As to the first ground, the illegality of the contract is not pleaded. No such defense is raised in the answer. The statute relied on is section 15 of the General Corporation Law (Laws of 1892, chap. 687). That statute provides that " No foreign stock corporation, other than a monied corporation, shall do business in this State without having first

procured from the Secretary of State a certificate that it has complied with all the requirements of law to authorize it to do business in this State. * * * No foreign stock corporation doing business in this State without such certificate shall maintain any action in this State upon any contract made by it in this State until it shall have procured such certificate." The only penalty for a violation of this provision is that a corporation doing business without such certificate is prohibited from maintaining an action in this State upon a contract made by it in this State until it shall have procured such certificate. The contract is not abrogated or made incapable of enforcement because of a failure to comply with the provisions of the statute. The right of a corporation to maintain an action to enforce such a contract is suspended until such a certificate is procured. The objection to the maintenance of such an action to enforce a legal cause of action is an affirmative defense which must be pleaded to be made available. The general rule is that a defendant who intends to avail himself of the benefit of a statute, as a defense to an action for damages for breach of an agreement, must specifically plead it. A familiar example is the Statute of Limitations. It has been held that where a defense rests upon a statute, and the fact of a violation of the statute does not appear upon the face of the complaint, the objection must be taken by answer, or the defense is waived. (*Crane* v. *Powell*, 139 N. Y. 379; *Wells* v. *Monihan*, 129 id. 161.) We think, therefore, the court was right in refusing to dismiss the complaint upon this ground.

We think the second ground of the motion to dismiss the complaint was equally without merit. The contract signed by both of the contracting parties provides that "It is hereby agreed that in consideration of W. P. Fuller & Co. buying all their supply of German Mirror Plates from the United Bavarian Looking Glass Works, for a period of six months from this date, the said United Bavarian Looking Glass Works agree to the following: To sell delivered F. O. B. New York" the articles mentioned. Thus, the contract is that in consideration of the plaintiff's buying all its supplies of German mirror plates from the defendants' firm, the defendants' firm agrees to sell to the plaintiff. The mutual covenant implied in such contract is that the plaintiff will buy and the defend-

ants' firm will sell, and the law thereby implies an expressed agreement of the plaintiff to buy as the basis of the agreement of the defendants' firm to sell.   The form of the obligation is not material so long as the intention of the parties can plainly be gathered from the instrument.   The phrase, "in consideration of W. P. Fuller & Co. buying" clearly implies an agreement of the plaintiff to buy as a consideration of the promise of the defendants' firm to sell, and thus the contract becomes a mutual contract, executory in its nature, but imposing upon the buyer the obligation to buy, and the seller the obligation to sell.   This question was considered by this court in *Baker Transfer Co.* v. *Merchants' Mfg. Co.* (1 App. Div. 507), and the determination in that case sustains the rulings of the court in this case.

The serious question, however, arises from the refusal of the court to allow the defendants to prove the negotiations and conversations between the plaintiff's manager and the agent of the defendants prior to, and at the time of, the execution of this contract. After the plaintiff had rested, the agent who signed this contract on behalf of the defendants was called as a witness, and asked to state what conversation he had with the plaintiff's manager on February 8, 1897, the day the contract was signed.   That was objected to on the ground that the defense set up by the defendants as a second defense does not constitute any defense or any ground for a reformation of the contract.   That objection was sustained and the defendants excepted.   Various other questions were asked tending to show the negotiation which led up to this contract and the representations made by the plaintiff's manager at the time of the execution of the contract, all of which were excluded upon the objection of the plaintiff.   The defendants claim that this evidence was admissible upon two grounds :   *First,* to prove the affirmative defense set up in the answer, upon which is based their demand for a reformation of the contract ; and, *second,* to prove cotemporaneous oral agreements by which it was agreed that the purchases that were to be made under this contract were not to exceed the quantity equal to that purchased by the plaintiff in any previous season of six months.

The allegations upon which the demand for affirmative relief is based are that when the contract prepared by the manager was submitted to the defendants' agent he refused to sign it unless the

quantity of goods to be ordered by the plaintiff from the defendants during the season named in the contract was specified. The plaintiff's manager thereupon agreed with the defendants' agent that the supply referred to in the paper writing meant, and was intended to mean, a quantity equal to the quantity purchased by the plaintiff in any previous season of six months, and that plaintiff would not need or use any more, and that the term used in the paper, to wit, "supply," had no other meaning, and was intended to have no other meaning or effect; that if the defendants' agent signed the paper as it was prepared, the plaintiff could not order or ask from the defendants any more than the quantity which the plaintiff had been in the habit of ordering from said firm in any previous season of six months; that the supply named in the said paper meant such average quantity as the plaintiff had been in the habit of purchasing from said firm in a previous season of six months and no more; that thereupon, relying upon such statements and assertions of the plaintiff's manager and upon the truthfulness and correctness of his said statements and assertions, the defendants' agent signed the said paper writing without reading it and relying solely and entirely upon the said assertions and statements of plaintiff's manager, and that defendants' agent did not understand the meaning of the expression used in the paper writing, except as the plaintiff's manager so explained it.

If, upon establishing the truth of these allegations, the defendants were entitled to have the contract reformed, then it was error to exclude the testimony offered by them. The contract in form is clear and unambiguous. By it the defendants agree to sell and deliver in New York these mirrors at a certain price, and the plaintiff agreed to order from the defendants " all their (plaintiff's) supply of German Mirror Plates." The defendants ask to reform this contract by inserting a clause limiting the amount that the plaintiff can order to a " quantity not exceeding their average purchases in any previous season of six months;" and this is asked upon the allegation that the plaintiff's representative stated that such was the meaning of the words " all their (plaintiff's) supply of German Mirror Plates."

The language used in the contract are words of ordinary use in the English language, and having a well-defined meaning. Thus, the word "supply" is defined in the Standard Dictionary as " that

which is or can be supplied; available aggregate of things needed or demanded; an amount sufficient for a given use or purpose." And in the Imperial Dictionary "that which is supplied; sufficiency of things for use or want; a quantity of something furnished or on hand." Thus the plaintiff's "supply" for a given period, giving to the words their usual significance, could have no relation to the amount that had been ordered for a prior period, but could relate only to the period covered by the contract. The substance of this claim, therefore, is that because plaintiff's representative stated that this term was intended to mean something entirely different from what it expressed, and the defendants' agent, relying upon that statement, signed the contract, therefore, the defendants are now entitled to have this contract reformed by adding a clause which is contradictory to the meaning of the contract as executed. In the answer the defendants allege that for over four months they complied with the contract. During all this time there was no claim that the contract did not express the understanding of the parties; and admitting that the defendants' agent misunderstood the meaning of the term used, there is no allegation that these defendants when they accepted and proceeded to carry out this contract were under any illusion as to its meaning or that they relied upon any representation made by the plaintiff's manager. If the defendants had promptly repudiated the contract upon the ground that as it stood it did not express their real intention, a different question would have been presented. They, however, accepted the contract as executed by their agent as it stood, and proceeded to perform it so long as it was profitable for them to do so; and only when, in consequence of a change of price of the articles to be furnished, it became unprofitable, was the obligation repudiated. It was then too late for the defendants to come in and allege that their agent, when he executed the contract, executed it under a misapprehension as to its meaning induced by the representations made by the plaintiff's manager. I think, therefore, the allegations of this answer, taken as a whole, do not present a case in which a court of equity would be justified in reforming the contract. Nor do I think the defendants could prove a cotemporaneous oral agreement that the plaintiff would not order or ask from the defendants more than a quantity that the plaintiff was in the habit of buying from the defendants in any previous season of six months.

This contract is complete. On its face the obligations of the contracting parties are plainly and specifically set forth. The plaintiff agrees to purchase from the defendants all their supply of German mirror plates for six months and the defendants agree to sell to the plaintiff all their supply of such mirror plates for that period at a price named. The oral agreement that the defendants seek to enforce is one that expressly contradicts the agreement as thus construed. By "all their supply" is clearly meant all the German mirrors that were necessary for the plaintiff's business for that period. The period is definitely fixed, namely, six months from the date of the instrument. It is not as to the amount of supplies that the plaintiff required or had on hand during a previous period; and to allow evidence of such an oral agreement would clearly allow the defendants to contradict the terms of the written contract by an oral cotemporaneous understanding and import into the contract a meaning inconsistent with the provisions therein expressed.

If authority is needed to show that such evidence was incompetent for such a purpose the case of *Gray* v. *Shepard* (147 N. Y. 177) is in point. In that case the court said: "The plaintiff offered to prove a conversation between himself and Mr. Shepard, when the contract was presented to him and before its execution, in which Mr. Shepard, in reply to an inquiry made by the plaintiff as to the meaning of the word 'incompatibility' in the contract, said that 'it meant that he should have the right to discharge you if at any time you were unsuited to newspaper work, or tired of newspaper work, and that is all it meant.' The judge excluded the evidence and the plaintiff excepted. The ruling was proper. The plaintiff, by the evidence offered, sought to limit the meaning of a word in common use, the only indefiniteness of meaning consisting in its wide application;" and it was held that the evidence was not competent. It was said in *Pindar* v. *Resolute Fire Ins. Co.* (47 N. Y. 117): "Evidence of surrounding circumstances and other parol evidence is, in some cases, admissible to show the meaning of language employed in a contract, or the sense in which it has been used, but never to show the intent of the parties as contradistinguished from what the words express." See, also, *Thomas* v. *Scutt* (127 N. Y. 136) where this question is discussed, and after an examination of the question the court said that evidence of what was between the par-

ties to a valid instrument in writing, either prior or at the time of its execution, cannot be received to contradict its terms. In that case it was also held that where a contract appears on its face to be complete, with mutual obligations to be performed, you can no more add to or contradict its legal effect by parol stipulations preceding or accompanying its execution than you can alter it through the same means in any other respect. The evidence of such oral agreement as alleged in this case would not tend to explain what the parties meant by this contract, for that appears on the face of the contract itself, but would introduce a modified and different understanding, which would contradict the written contract, and change it from an absolute contract to furnish the plaintiff with all its supplies for a period of six months into a contract by which the defendants would furnish, not all the plaintiff's supplies for the period, but the amount of such supplies that plaintiff had ordered during a prior period. Such an oral agreement, therefore, would not be one supplementary to the contract as actually made, but would be contradictory thereto; and as it would not be such evidence as tended to explain an ambiguity, or the meaning of some provision in the contract, it is not admissible.

Such evidence "is received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said, but to enable it to understand what they wrote, as they understood it at the time. Such evidence is explanatory and must be consistent with the terms of the contract." (*Thomas* v. *Scutt, supra.*) We think, therefore, that the evidence was properly excluded.

The defendants insist that the court should have submitted the question of the amount of the plaintiff's damages to the jury, as the only testimony as to the value of the materials at the time of the purchase was the evidence of an employee of the defendants. There was no request, however, to submit such a question to the jury. No objection seems to have been taken to the testimony offered by the defendants' manager as to the market value of the goods at the time of the purchase; nor was the attention of the court called to the fact that the plaintiff was entitled to have such a question submitted to the jury. Both parties had made a motion for the direction of a verdict, and a general request to submit the case to the jury is not

sufficient to raise the question that the amount of the plaintiff's damages should have been submitted to the jury because the only evidence in the case as to the facts upon which the damages could be ascertained was given by an interested witness. To render such an objection available the defendants should have specified the particular question which they desired should be submitted to the jury, to call the attention of the court to the fact that the only evidence upon that question was given by an interested witness; and in the absence of such a request the court was justified in accepting the correctness of the evidence as to the value of the articles which the defendants had contracted to sell.

We have thus considered all of the questions presented upon this appeal which require notice. We think no error was committed which justified a reversal of the judgment, and it is affirmed, with costs.

VAN BRUNT, P. J., O'BRIEN, MCLAUGHLIN and HATCH, JJ., concurred.

Judgment affirmed, with costs.