ABRAHAM FRANKENBERG, Appellant, *v.* SAMUEL PERLMAN, Respondent.

First Department, November 23, 1917.

**Pleading — allegations stating cause of action for reformation of contract to express agreement of parties.**

Allegations in a counterclaim that the plaintiff had agreed to purchase stock on defendant's retirement from business at its book or actual value, and that the plaintiff had falsely represented that as used in the written agreement, the words "face value" meant book value or actual value, which representation was made fraudulently, with intent to deceive the defendant, and that the defendant relying on such representation and believing the same to be true, signed the agreement, present a cause of action for the reformation of the contract to express the real agreement of the parties.

DAVIS and SCOTT, JJ., dissented, with opinion.

APPEAL by the plaintiff, Abraham Frankenberg, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of April, 1917, denying his motion for judgment on the pleadings consisting of a complaint, an amended answer and the reply thereto.

*Benjamin Jaffe*, for the appellant.

*Julius M. Lowenstein*, for the respondent.

PAGE, J.:

The allegations in the counterclaim that the plaintiff had agreed to repurchase the stock on defendant's retirement from

the business at its book or actual value, and that the plaintiff had falsely represented that as used in the written agreement the words " face value " meant book value or actual value, which representation was made fraudulently with intent to deceive the defendant, and that the defendant, relying on said representation and believing the same to be true, signed the agreement, present a cause of action for the reformation of the contract to express the real agreement of the parties.

The representation was as to a fact, and not the expression of an opinion, knowingly and fraudulently made to induce the defendant to sign an agreement which in fact did not express their true agreement.

These allegations state fraud on one side and mistake on the other, such as would move a court of equity to grant relief.

The order should be affirmed, with ten dollars costs and disbursements.

LAUGHLIN and SMITH, JJ., concurred; SCOTT and DAVIS, JJ., dissented.

SMITH, J. (concurring):

I agree with Mr. Justice PAGE that the facts alleged are sufficient to authorize the court to reform the contract. In *Forstall* v. *The Alberto* (24 Fed. Rep. 379) the court lays down this rule: "When the terms of an offer by cablegram were ambiguous, and misunderstood by the parties receiving and accepting the same, to the knowledge of the party making the offer, it was the duty of the latter to have at once given notice by cablegram of the misunderstanding, and to protest against the acceptance as made, and their failure to do so estopped them from denying the contract as made from such acceptance of their offer. They were silent when equity required them to speak."

The case at bar presents even stronger ground for reformation, because the mistake of the defendant was due to the misrepresentation and fraud of the plaintiff. It is contended that this misrepresentation and fraud of the plaintiff, while ground for rescission of the contract, is not ground for reformation. In 34 Cyc. 920, the text in part reads: " The other ground which will warrant the reformation of an instrument

is where there is ignorance or mistake on one side, and fraud or inequitable conduct on the other." To this proposition many cases are cited. In *Welles* v. *Yates* (44 N. Y. 525) it is held: " A court of equity will not interfere to reform a contract, on the ground of mistake, unless it is mutual. But mistake on the one side and fraud on the other will authorize a reformation."

Further: "Under a complaint alleging the facts upon which relief is claimed, and that, by mistake of the plaintiff, a deed does not contain a reservation in favor of the plaintiff, to which, under the prior contract between the parties, he was entitled, and that defendant well knew all of the facts, but not charging fraud in words, relief may be given on the ground of fraud on the part of the defendant."

Again, in 34 Cyc. 922, the rule is stated: " Hence mistake on one side and misrepresentation, whether wilful or accidental, on the other is ground for reformation when the party deceived has relied on the misrepresentations of the party seeking to bind him, and when the misrepresentation was of a material fact in which the party deceived placed confidence."

There is more doubt as to plaintiff's contention that the words " face value" are unequivocal, and that the defendant was not authorized to rely upon the plaintiff's misrepresentation as to what was their import. While to one trained in business law this probably would be true, to one not acquainted with commercial expressions I am satisfied the expression is not so clear as to lead the court to refuse reformation to express the real intent of the parties when the words were misused through the actual fraudulent misrepresentation of the plaintiff.

I, therefore, concur for affirmance.

LAUGHLIN, J., concurred.

DAVIS, J. (dissenting):

This is an appeal by the plaintiff from an order denying his motion for judgment on the pleadings, consisting of a complaint, amended answer and reply, the learned court at Special Term holding that the defendant had stated a cause of action by way of counterclaim. The complaint alleges that the

plaintiff was and is now the owner and holder of a majority of the outstanding capital stock of the National Sponge and Chamois Company, Incorporated, and that the defendant is the owner and holder of 30 shares issued to the defendant upon the written direction of the plaintiff, addressed to the said corporation, from a total of 3,750 shares to which the plaintiff at that time was entitled.

At the time the defendant received the said thirty shares he was in the employ of the corporation and the said thirty shares were issued to him so that, as an employee of the said corporation, he should have a financial interest therein. It is alleged that the defendant paid to the plaintiff $3,000 in full for such shares for the purpose of acquiring such interest in the said corporation. It is then alleged that on March 15, 1915, the plaintiff as party of the first part, and the defendant and other employees of the corporation as parties of the second part, entered into a written agreement relating to the shares which had been issued to the defendant and others mentioned in said agreement; that by the terms of this instrument the defendant agreed that, in case he should at any time thereafter cease to be employed by or actively associated with the said National Sponge and Chamois Company, the plaintiff should have the right, within sixty days after such employment or association ceased, to purchase from the defendant any and all stock in the hands of and held by defendant in the National Sponge and Chamois Company, Incorporated, at the face value of such stock, and the plaintiff in consideration thereof, among other things, agreed and guaranteed that the dividend from the stock owned by the defendant in the National Sponge and Chamois Company should amount to at least six per cent per annum for the period of five years from the date of the said agreement. The agreement is annexed to and made a part of the complaint.

The complaint further alleges that the defendant remained in the employ of the National Sponge and Chamois Company as salesman until December 31, 1916, when his employment by and connection with the said corporation ceased. It is also alleged that after the determination of the defendant's connection with the corporation, and within the pre-

First Department, November, 1917.          [Vol. 180.

scribed limit of sixty days — that is, on or about January 3, 1917 — plaintiff notified the defendant that he desired to avail himself of the privilege given by the agreement to purchase the defendant's thirty shares of stock pursuant to the terms and conditions of the agreement. Plaintiff alleges further that the defendant failed, refused and neglected to keep the agreement and notified plaintiff that he would not sell or transfer the thirty shares of the stock at the face value in accordance with the terms of the agreement. Then follow allegations of the tender of the face value of the thirty shares of stock, together with the amount of the accrued dividends, and a demand for a transfer of the stock to the plaintiff pursuant to the terms of the contract.

The complaint contains allegations appropriate to show that the plaintiff has no adequate remedy at law, and demands judgment that the defendant be compelled to perform the agreement of March 15, 1915, and directed to transfer, assign or indorse over to the plaintiff the said thirty shares of stock upon the plaintiff's paying to him as the purchase price therefor $300, the face value of the stock, together with $300 as the dividend thereon declared.

The defendant in his answer admits the ownership of the thirty shares of stock, but denies that they were issued to him for the purpose of giving him a financial interest in the corporation as an employee. He also admits the tender of $3,000 in cash as the face value of the stock, and the tender of $300 in cash as dividend for 1916, and he admits that he refused to transfer the thirty shares to the plaintiff. He admits, by not denying, the 6th allegation of the complaint, which sets forth the execution of the agreement of March 15, 1915.

Then as a separate defense to the complaint and for affirmative relief, defendant alleges, among other things, that on the 15th day of March, 1915, the plaintiff induced the defendant to enter into the written agreement dated March 15, 1915, annexed to the complaint, by falsely and fraudulently representing to the defendant that if defendant would purchase thirty shares of the capital stock of the said National Sponge and Chamois Company, Incorporated, for the sum of $3,000, the plaintiff would repurchase the same, provided the

defendant ceased to be in the employ of or actively associated with the said National Sponge and Chamois Company, Incorporated, within sixty days after such employment or association ceased, at the actual or book value of the stock at the time of such repurchase. Then follows an allegation that the defendant relied upon this fraudulent promise of the plaintiff to repurchase the said thirty shares of stock at the actual or book value thereof, and by reason thereof entered into the written agreement annexed to the complaint, under the belief that it provided for the repurchase of his stock at the actual or book value, and that thereafter the defendant paid to the plaintiff the sum of $3,000 as the purchase price of the said thirty shares. Defendant further alleges that, at the time of the execution of the said agreement, plaintiff represented to defendant that the words " face value " in said agreement meant actual or book value and that they were intended to mean the actual or book value, and that at the time of the execution of the agreement the defendant was wholly ignorant of the meaning of the words " face value " and " actual value," and believed and relied upon the representations of the plaintiff that the words " face value" meant and were understood to mean, as represented by the plaintiff, the same as the actual or book value, and that he relied solely upon the truthfulness of the statements of the plaintiff in this respect. It is then alleged that since the making of the agreement defendant has ascertained that the representations and statements made by the plaintiff were wholly false and known to the plaintiff to be false and were made with the intent to defraud and deceive the defendant, in that the words " face value " actually mean the value as printed upon the face of the certificates, and that " book value " means the value shown upon the books of accounts of the corporation.

Then follow allegations to the effect that the defendant severed his connection with the corporation on or about the 31st day of December, 1916, and that on or about the 3d day of January, 1917, he demanded of the plaintiff, pursuant to the agreement of March 15, 1915, that he pay to the defendant the book or actual value of the thirty shares of the stock, together with the dividends upon said stock, and

that the book value of the said stock is far in excess of $3,000, and that the dividends earned thereon in 1916 are far in excess of $300, and that the defendant has duly performed and is ready, willing and able and has duly offered to sell and transfer to the plaintiff the said thirty shares upon payment to him of the proper dividends and the book or actual value of the stock. Defendant then demands judgment dismissing the complaint, and judgment against the plaintiff that the agreement be reformed by substituting the words " actual or book value " for the words " face value," and that the plaintiff be compelled to pay to the defendant the book or actual value, together with the proper dividend thereon for the year 1916.

The plaintiff in his reply denies the allegations of fraudulent representation made by the defendant in his answer. As stated above, the court at Special Term denied the plaintiff's motion for judgment on the pleadings, on the ground that the defendant had stated a cause of action for a reformation of the contract.

I do not agree with the conclusion reached by a majority of the court that the defendant has stated a good cause of action for a reformation of the written agreement, for the reason, among others, that he has failed to allege any agreement between himself and the plaintiff to which to conform the written instrument. He asks that this written agreement to repurchase the stock at its face value be changed into one for the repurchase at its book value, without having alleged the latter agreement anywhere in his pleadings. He states that the plaintiff induced him to sign the paper in evidence " by falsely and fraudulently representing to the defendant that if he would purchase the thirty shares of capital stock of the said National Sponge and Chamois Company, Incorporated, for the sum of three thousand dollars, that the plaintiff would repurchase the same * * * at the actual or book value of such stock at the time of such repurchase." But this allegation does not set forth the making of any agreement between the parties. It is merely a statement of one of plaintiff's alleged fraudulent acts, designed by him to induce the defendant to sign the written instrument, the other being the alleged false representation

that the words " face value " in the contract meant " book value."

In *Albany City Savings Institution* v. *Burdick* (87 N. Y. 40) the court says: " It is the general rule that where a written instrument fails to conform to the agreement between the parties in consequence of the mutual mistake of the parties however induced, or the mistake of one party and fraud of the other, a court will reform the instrument so as to make it conform to the actual agreement between the parties." But in the case at bar the defendant has alleged no mutual agreement between himself and the plaintiff which the written contract fails to express. He has simply alleged that by false and fraudulent representations of the plaintiff he was induced to enter into the written agreement, believing that the words " face value " meant " book value." Under these pleadings, I fail to see how the defendant can sustain his claim to a reformation of the written contract. It may be that he has stated a cause of action for a rescission because of plaintiff's alleged fraud, but even this is doubtful in view of the fact that the representation is not such as would deceive an ordinarily intelligent person.

There is another reason why the order should be reversed. The written contract is simple and unambiguous in its terms The words " face value " used therein as applied to certificates of stock are words of ordinary usage and of well-known meaning. To allow a reformation of this contract by showing orally that the plaintiff said that the words " face value " as read in the contract meant and were intended to mean actual or book value, would be in effect to make a new contract quite different from that set forth in writing, by ascribing to words whose meaning is well understood a meaning absolutely foreign to them. Such a course would be contrary to authority. (*Fuller & Co.* v. *Schrenk*, 58 App. Div. 222; affd., 171 N. Y. 671.)

The order should be reversed, with ten dollars costs and disbursements, and the plaintiff's motion for judgment on the pleadings should be granted, with ten dollars costs.

SCOTT, J., concurred on second ground.

Order affirmed, with ten dollars costs and disbursements.