MERIDEN COAL MINING CO. v. VAN DE WATER et al.

(Circuit Court of Appeals, Second Circuit. November 13, 1911.)

No. 76.

FACTORS (§ 46*)—ACTION FOR COMPENSATION—AMOUNT OF RECOVERY—WHEN QUESTION FOR JURY.

Selling agents, employed by a coal company to sell and make deliveries of coal on its arrival at tidewater, who were paid a commission therefor, were not, as matter of law, and in the absence of further contract, entitled to the same commission on contracts negotiated by them as brokers with a purchaser for stated quantities of coal to be delivered by the company at its mines; and, in an action to recover for their services, the direction of a verdict, on the theory that they were so entitled, was error.

[Ed. Note.—For other cases, see Factors, Dec. Dig. § 46.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by Gilbert M. Van De Water and John B. Shield against the Meriden Coal Mining Company. Judgment for plaintiffs, and defendant brings error. Reversed.

———————————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. Andrade, Jr., for plaintiff in error.

Louis H. Rowe (Grant C. Fox, of counsel), for defendants in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment entered on a verdict directed by the court in favor of the plaintiffs for the sum of $5,531.26. The plaintiffs' claim was for a commission of five cents per ton on two contracts which they negotiated, each for 50,000 tons of coal to be delivered by the defendant to the Skeele Company.

The plaintiffs had sold the coal of the Philippi Coal Company, whose mine was subsequently taken over by the defendant. Van De Water, one of the plaintiffs, testified that they were then employed for the defendant by one Paterson, who died before the trial. The whole testimony as to the contract of employment was as follows:

"Q. Now, what did Mr. Paterson say and you say? Mr. Andrade: I object to that as incompetent, immaterial, and irrelevant. (Objection overruled. Exception by defendant.) A. He came over, he said, to see if I could handle the coal again as I had previously sold at the mine, and they had taken it back. He said he came over to see if he could make a connection with me to handle his tidewater coal; that they had taken the mine back and formed the Meriden Mining Company, and wanted to know if I would handle the coal again for them that they sent here on the market. I said I would. He wanted to know on what terms. I said: 'The same as previously, five cents a ton.' He said: 'All right.' And he shipped in coal to me, and I made a sale of it, and made my returns to him. Q. You said, the same as coal you had sold for him before? A. Yes, sir. Q. What concern was it then? A. It was the Philippi Coal Company. Q. And they were operating the same mine that was subsequently operated by the Meriden Coal Mining Company? A. Yes."

The plaintiffs sold the defendant's coal from November, 1908, to June, 1909, under this contract. The record is meager in respect to the course of dealing between parties, but it sufficiently appears that the defendant shipped daily from the mine coal to their own order by the Philadelphia & Reading Railroad Company to Port Reading on the Arthur Kill. At that point it authorized the railroad company to deliver the coal on the plaintiffs' orders to canal boats. This is known as tidewater coal, and the plaintiffs sold it on the market at the best prices they could get, ordered it on canal boats to be towed to the destinations named by the purchasers, and forwarded the boats' bills of lading to the defendant, which apparently made the collections. The correspondence shows that the parties differed upon the question whether the plaintiffs' commission was earned upon delivery of the coal, or only when it was paid for. They both referred to the custom of the trade, but there is no proof whether there was a custom or what it was.

Thus it will be seen that, after the coal had reached tidewater at Port Reading, the plaintiffs had possession of it, sold it, and loaded it on board boats to destination. In the language attributed by Van De Water to Paterson, they "handled" the defendant's coal, and apparently all of the defendant's tidewater coal. This would seem to put

them in the position of regular selling agents for the defendant, rather than in that of mere brokers, whose service, in the absence of stipula-tions to the contrary, is performed when they bring buyer and seller together. The former case is quite different from the latter in respect to earning commissions. This subject was considered by the Supreme Court of Pennsylvania in Creveling v. Wood, 95 Pa. 152.

Quite separately from these tidewater transactions, the plaintiffs ne-gotiated two contracts each for future delivery of 50,000 tons of de-fendant's coal f. o. b. cars at mines. These were the only contracts of the kind the plaintiffs negotiated for the defendant. It appears from the record they were acting in respect to these contracts merely as brokers and had nothing to do with the delivery of the coal. The plaintiffs' theory is that they were entitled to five cents a ton upon the making of these contracts by virtue of their original employment by Paterson. Ordinarily, a broker is entitled to his commission when he brings the contracting parties together, though, of course, the parties may make any agreement as to commissions they wish. But the court below held, as matter of law, that the plaintiffs were to be paid on those contracts exactly as they were paid for acting as selling agents for the defendant's tidewater coal. We think this was error, and the defendant's exception to the direction of a verdict is sustained. Upon a new trial they may be able to show this, but it cannot be so held on this record as a matter of law.

Even assuming that the record is sufficient to show what the con-tract was, we think the case should have gone to the jury. It could be argued that the plaintiffs' conduct was not entirely consistent with their present right to a commission. The contracts were made in March, and on April 1st they rendered a bill with the amount of com-missions left blank. The plaintiff Shield, when shown the bill, said it was in Van De Water's handwriting and must have been a clerical error. Van De Water, when recalled, said he thought the bill went in for the whole amount, $5,000, and that, if it did not, it was through inadvertence. We are not to be understood as expressing any opinion on the questions involved in this cause. Our purpose is to show that, stating the case most favorably for the plaintiffs, the question was one for the jury.

The judgment is reversed, with costs, and a new trial ordered.