### STOCKTON COMMISSION CO., Inc., v. NARRAGANSETT COTTON MILLS, Inc.

(District Court, D. Rhode Island. March 23, 1926.)

#### No. 1735.

**1. Pleading** ⬤=312.

Written instruments, expressly made part of declaration, must prevail over any statement in declaration inconsistent with their true construction.

**2. Principal and agent** ⬤=81(4)—Procurement of binding contracts to purchase goods to be manufactured by seller held not "sale" of goods, within contract to pay commission thereon to selling agent.

Procurement of binding contracts to purchase future goods to be manufactured by sell-

er *held* not equivalent to "sale" of goods, within contract to pay commission thereon to selling agent.

**3. Principal and agent ⬥➾81(5)—Corporation employing sole selling agents did not bind itself to continue manufacture of certain product, so that agents should profit by commissions.**

Corporation, by employing sole agents for sale of all goods manufactured by it, did not bind itself to continue manufacture of any certain product; agent's right to commissions on sales being subordinate to that of principal to conduct its business according to its best judgment as to its interest.

**4. Principal and agent ⬥➾48.**

Agent, assuming to sell entire product of manufacturing company for three years is bound to act in interest of corporation.

**5. Contracts ⬥➾309(2)—Court will not imply term that subject-matter in power of one party to contract shall be kept in existence to provide accessory or subordinate benefit to other party.**

Where there is principal subject-matter in power of one party to contract, court will not, in absence of express words, imply term that it shall be kept in existence to provide subordinate or accessory benefit arising by contract to other party.

At Law. Action by the Stockton Commission Company, Inc., against the Narragansett Cotton Mills, Inc. On demurrer to amended declaration. Demurrer sustained.

See, also, 6 F.(2d) 159.

Claude R. Branch and William H. Edwards, II, both of Providence, R. I., for plaintiff.

Arthur Cushing and George Hurley, both of Providence, R. I., for defendant.

BROWN, District Judge. [1] As the written instruments, Exhibits A and B, are expressly made part of the plaintiff's declaration, their terms must prevail over any statement in the declaration that is inconsistent with the true construction of these documents. Howe v. Larkin (C. C.) 119 F. 1005; Jobbins v. Kendall Mfg. Co., 196 F. 216 (decisions in this district). See, also, Vital et al. v. Kerr (C. C. A.) 297 F. 959, 962.

Exhibit A shows proposals, but these in some respects are inconsistent with the terms agreed upon in Exhibit B, and it cannot be regarded as a document that evidences any completed agreement between the plaintiff and defendant, or affects the express provisions of Exhibit B.

[2] Exhibit B is the document that shows the contractual obligations of the parties:

"Exhibit B.

"This agreement, made this 30th day of October, 1919, between the Narragansett Cotton Mills, Inc., a corporation duly incorporated by and existing under the laws of the state of Rhode Island, party of the first part, and the Stockton Commission Company, Inc., state of Delaware, parties of the second part, witnesseth:

"That the parties hereto, for and in consideration of these presents, and the sum of one dollar each to the other in hand paid at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have mutually agreed as follows:

"First. The party of the first part agrees to employ and by these presents hereby does employ the said parties of the second part as its sole selling agents for the sale of all the products and goods manufactured by or at the mills of said party of the first part, and it agrees to pay said parties of the second part five per cent. (5%) commission on all sales of cloth and five per cent. (5%) commission on all sales of yarns, to be computed upon the price thereof before deducting any discount, and also all charges for freight, cartage, and other incidental expenses which are attached to the sale and handling of said goods by them.

"Second. The said parties of the second part agree to use their best endeavors to sell the output of said mills and guarantee said party of the first part against any loss from bad debts on goods received by them and sketched as having been sold for said party of the first part, and the said parties of the second part also agree on the receipt of goods to advance to said party of the first part on all of said goods so shipped to them or by their instructions up to seventy-five (75%) per cent. of the net cash value of the said shipments, and it is also agreed between the parties hereto that said parties of the second part are to have a first lien on said goods for the amount of such advances so made.

"Third. It is further agreed between the parties hereto that the said parties of the second part shall continue to be sole selling agents of the said party of the first part until such time as the parties named herein shall mutually consent in writing to terminate such selling agency and end this contract, and either party hereto can terminate this contract after three years from date by giving the other party sixty (60) days' previous notice in writing of such intention; but said party of the first part cannot end this contract or terminate said agency while there is any money

due or owing from it to the said parties of the second part.

"Fourth. It is also agreed between the parties hereto that, if said parties of the first part should fail to pay the moneys owing to the parties of the second part when same become due and said last-named parties demand payment, then they, said parties of the second part, shall be at liberty, upon giving ten days' notice in writing to said party of the first part, to levy on and sell all securities held by them, and out of the proceeds pay their claim, and, if any balance remain, pay same to said party of the first part.

"Fifth. It is also agreed between the parties hereto that the said parties of the second part shall render accounts current quarterly, which shall set forth the net amounts due from either to the other of the parties hereto, and the parties hereto further agree that such accounts shall be accepted as a final determination or account stated of the amounts due unless objections thereto are made within ten days from the date or dates of the rendition of said accounts.

"Sixth. These presents shall bind the parties hereto, the successors of the party of the first part, and the heirs and representatives of the parties of the second part.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written. [Seal of Narragansett Cotton Mills, Inc.] Narragansett Cotton Mills, Inc. [Signed] Andrew E. Johnson, President. Attest: Charles H. Studley, Secretary.

"Approved:        H. W. O'Brien.
                "Henry Stoehlz.
                "Oscar A. Carlson."

Referring to Exhibits A and B, the declaration states:

"In and by said instruments, as intended and construed by the parties, the defendant promised to pay to the plaintiff as its compensation a five per cent. (5%) commission upon the price of all cloth for the sale of which binding contracts should be made by or in behalf of the defendant during the period of said agency, and particularly a commission of five per cent. (5%) on the price of a certain large quantity of tire fabric which the Goodyear Tire & Rubber Company (hereinafter referred to as 'Goodyear') on or about the twenty-eighth day of October, 1919, promised to purchase from the defendant, by a binding contract which was negotiated and obtained by the plaintiff in behalf of the defendant (hereinafter referred to as 'said contract of Goodyear' or 'said original contract of Goodyear'), said commissions to be computed upon the gross price of the tire fabric to customers of the defendant, before deducting any discount, and the defendant also promised to pay all charges for freight, cartage and other incidental expenses attached to the sale and handling of such tire fabric. The said promises of the defendant to the plaintiff were made in consideration of the plaintiff's obtaining said contract of Goodyear and the promises of the plaintiff that it would use its best endeavors to sell the output of the defendant during the period covered by said agency."

Upon a comparison of the exhibits and the declaration the contradiction is apparent. Neither as a matter of law, nor as a practical matter, is the procurement of an agreement between the Goodyear and Narragansett Companies like that contained in Exhibit C equivalent to a sale of goods.

It is evident upon a mere inspection of these documents that they do not contain an agreement to pay a commission of 5 per cent. or other commission merely for the procuring from third parties of binding contracts to purchase future goods to be manufactured by the Narragansett, and that the words of the declaration, "as intended and construed by the parties," can have no effect to alter the contract, Exhibit B.

The declaration proceeds upon the erroneous assumption that commissions were earned when orders for future goods to be manufactured at the mills were obtained by Stockton for the Narragansett. In this respect the plaintiff's declaration proceeds upon error of law which is manifest from Exhibit B.

It is the contention of the plaintiff that the word "sale" is ambiguous, and sometimes includes an agreement to buy. While it is true that in certain brokerage cases the procuring of a buyer who is ready and willing to take the goods is equivalent to a sale in establishing the rights to a commission, such is clearly not the case under the present contract, which makes the Stockton Company sole selling agent of the products of the mill for an extended time (see paragraph 3 of Exhibit B), and contemplates completed manufacture and delivery as the basis for fixing the amounts to be paid as commissions, and of advances to be made by the commission company to the manufacturer, and does not bind the manufacturer as to the quantity of goods it shall produce.

Furthermore, the contract between the Narragansett and the Goodyear Company, as set forth in Exhibit C, was in substance a contract that the Narragansett should man-

ufacture for the Goodyear and sell to it upon a "cost plus" basis, tire fabric from yarns to be paid for by the Goodyear and delivered by the Goodyear at the mills of Narragansett.

In computing the "cost plus" basis, the amount for which the Goodyear was to be credited for yarn furnished to the Narragansett was to be determined by the market price "at designated intervals, or upon designated dates, to be determined in advance by Goodyear," etc. The contract between the Goodyear Company and the Narragansett contains mutual and dependent obligations of those parties.

[3, 4] In employing the Stockton as its "sole agents for the sale of all the products and goods manufactured by or at the mills," the Narragansett did not bind itself to continue the manufacture of a certain product in order that the agent should profit by commissions, regardless of the interest of the manufacturer or of changes in business conditions. The Narragansett, in its dealings with third parties, still remained in control of its own affairs as a principal and did not abdicate that in favor of its agent. The right of the general sales agent of a manufacturing corporation to commissions on actual sales of product is subordinate to the right of the principal to conduct its manufacturing business according to its best business judgment as to the interest of the corporation. The agent who assumes to perform so essential a part of the business of a manufacturing company as the sale of its entire product for a three-year period is bound to act in the interest of the corporation.

In case the manufacturer in good faith and in the exercise of honest judgment diminishes or ceases the production of a particular product, he does not violate the contract as set forth in Exhibit B, which would still remain applicable to whatever products the manufacturer as principal might decide to make.

[5] Where there is a principal subject-matter in the power of one of the parties, and an accessory or subordinate benefit arising by contract out of its existence, the court will not, in the absence of express words, imply a term that the subject-matter shall be kept in existence merely to provide the subordinate or accessory benefit to the other party. See 13 C. J. 643, n, 90 (a), 91.

"In the absence of an express or implied stipulation to the contrary in the contract of agency, the principal of a commercial agent is under no obligation to continue in business and afford the agent opportunity, means, and facilities for earning his commissions; and hence his failure to do so affords the agent no ground for the recovery of damages. Where, however, there is such an obligation, whether expressed or implied, on the part of the principal, he is liable in damages to the agent for a breach thereof." 2 C. J. 787, § 453.

The extent to which an obligation should be implied to furnish a sales agent with goods to enable him to earn a commission is a matter upon which there is considerable diversity of opinion; certain cases holding that the principal incurs no liability upon electing to discontinue his business, and other cases holding that an agreement may be implied from the circumstances to continue to supply goods to a reasonable amount in order to enable the agent to earn his commissions, or to compensate him in case the business should be voluntarily terminated during the contract period for the agency. See Friede v. White Co. (D. C.) 244 F. 272. It does not follow, because the manufacturer and the buyer were brought together by the sales agent, and entered into a contract like Exhibit B for the supplying of yarn to the manufacturer, and for crediting that yarn upon the price of the goods, that the rights of the sales agent under Exhibit B were enlarged to cover the rights of the manufacturer against the Goodyear Company under that contract. The language of Judge Hand in Friede v. White states the general principle:

"The agreement is commercial, and presupposes that both sides will continue in good faith to prosecute the venture in which they have engaged. Nevertheless the principal does not place the conduct of his business in the hands of his agent or agree in advance that every order which the agent sends in must be accepted, regardless of his own judgment as to what business it will be profitable for him to transact. If it were so, the principal would have abdicated the conduct of his own affairs. If, on the other hand, the principal does not honestly exercise that judgment, but is moved by a desire to exclude the agent, or by any personal motive other than to prosecute his business with a sole eye to its success, he is responsible. This is what is meant by an 'arbitrary' refusal of orders. This fact the agent must allege and prove, since prima facie the principal is presumed to be acting in accordance with the arrangement which gives him complete freedom as his judgment may dictate."

Only by disregarding ordinary business conditions and practices can we imply what is not expressed in the contract, Exhibit B, that if the sales agent produced a party who

was willing to make a contract with the manufacturer, the mere entering into that contract should in the interest of the sales agent tie the manufacturer to its terms for the period of three years, and disable him from modifying its terms in case the financial condition of the buyer rendered it advisable to do so.

As we have said in effect, the employment by a corporation of a general sales agent does not diminish the right of the corporation and the duty of its officers to conduct the business primarily for the interest of the corporation and stockholders. Each person entering into a contract to become a general sales agent for a corporation should understand that the function he is to perform is primarily for the benefit of the corporation, and not primarily for the benefit of the sales agent; that the sales agent acquires no right as a director or overseer of the business policy of the manufacturing corporation. While a sales agent may object to an arbitrary refusal of the corporation to produce a product in order to deprive him of his commissions, it should be observed that the contract appoints him generally as sole selling agent; that he is entitled to sell other goods which the plaintiff may prefer to manufacture and gain his commission on those.

I find no analogy between the present case and the ordinary case of a broker who has procured a specific purchaser, whose order for goods has been accepted by the principal. An acceptance of a buyer may be a determination by the principal that the broker has done his work as to that transaction and that the commission is earned. The acceptance of a contract like the contract with the Goodyear does not involve any final judgment as to future conditions, or a determination that the course of conduct for the next three years is so irrevocably fixed that the parties cannot themselves modify them, or refuse to continue the relations without the consent of the sales agent.

The defendant properly contends that contracts like Exhibit B should not be confused with ordinary contracts with a broker, or with contracts relating to the sale of real estate, citing 2 C. J. p. 771; Creveling v. Wood & Leman, 95 Pa. 152.

In Meriden Coal Mining Co. v. Van De Water, 191 F. 805, 112 C. C. A. 319 (C. C. A. 2d), Judge Ward said:

"This would seem to put them in the position of regular selling agents for the defendant, rather than in that of mere brokers, whose service, in the absence of stipulations to the contrary, is performed when they bring buyer and seller together. The former case is quite different from the latter in respect to earning commissions. This subject was considered by the Supreme Court of Pennsylvania in Creveling v. Wood, 95 Pa. 152."

Defendant cites, also, Newhall v. Victor Box Mfg. Co., 113 A. 59, 269 Pa. 545; Stanley v. Dryer, 127 N. Y. S. 468, 70 Misc. Rep. 561.

The plaintiff cites Cannon v. Staples, 127 A. 145, January, 1925, a decision by the Supreme Court of Rhode Island, which is a brokerage case relating to a single transaction, and in my opinion is inapplicable. The plaintiff also cites Lockwood v. Levick, 8 C. B. N. S. 603, to show that a commission to be paid "on all goods bought" was earned when the principal had accepted orders, whether deliveries had been made or not. I can find no ambiguity in the term "sales," as used in Exhibit B, which justifies any evidence as to practical interpretation or intention. The provisions for payment and for advances show clearly that to substitute, as the plaintiff has done in its declaration, the words "commission on the price of all cloth for the sale of which binding contracts should be made" for the terms of the contract, Exhibit B, is unsound, and results only in confusing the issues of the case.

If the plaintiff claims under the contract, Exhibit B, for payments for goods actually sold, that should be capable of a simple statement. If he claims a breach of contract by the defendant in discontinuing to manufacture goods and supply them to the Goodyear, he should declare for breach of contract and excuse nonperformance on his part by alleging an arbitrary refusal of the plaintiff to continue to manufacture and supply goods. Friede v. White (D. C.) 244 F. 272.

The demurrers to the counts which seek recovery of commissions on undelivered goods—i. e., counts 3, 4, 5, 6, 9, 10, 11, 12—are sustained, on the ground that no causes of action are stated therein.

Counts 1, 2, 7, and 8, which seek recovery of commissions on delivered goods, present a different question. So far as the plaintiff relies upon the allegation that the defendant agreed to pay commissions "upon the price of all cloth for which binding contracts should be made," etc., said counts are subject to demurrer for reasons already stated. The plaintiff asserts, however, that, assuming that the contract is solely Exhibit B, and allows commissions only on actual deliveries, the counts present a valid cause of action for commissions earned on actual deliveries. It

is evident, however, that these counts are too confused, prolix, and indefinite to enable the defendant to make issue therewith, and cannot stand in their present form.

The defendant's causes of demurrer to the first count—fourteenth, fifteenth, sixteenth, eighteenth, twentieth, twenty-first, and twenty-third—present a sufficient number of grounds for sustaining the demurrer to this count, additional to those already considered.

While in certain cases it may avoid prolixity to make references to other counts and to documents appended, in the present case such confusion results that objections to form alone are sufficient as special demurrers. A consideration of all the details of the demurrers to the various counts would be unprofitable. The criticism for prolixity must be evenly distributed between counsel for plaintiff and defendant.

Demurrers sustained as to counts 1 to 12, inclusive.