Beekman, J.
The complaint alleges that at the times mentioned therein the plaintiff was a life insurance agent, and had a contract with the defendant, a copy of which is annexed to the pleading ; that about the month of September, 1889, the plaintiff obtained from one Harry Miner an application in the usual form, signed by him, for a policy of assurance in the defendant company on his life for $100,000, and forwarded the same to the company for its action; that s^id policy was what is technically called a “ 20-year endowment policy,” and the annual premium was $5,895, and that the said Miner was able to pay the premium on the said policy, and was physically and otherwise a good and desirable risk ; “ that, arbitrarily, and without reason, cause, or justification, defendant refused to have the said Miner physically examined, *80 and refused to issue a policy ; that plaintiff has performed all the conditions of the contract hereto annexed to be performed by him, and, by reason of defendant’s arbitrary refusal to have the said Miner examined, and to issue a policy to him, plaintiff has been deprived of the following commissions, as per contract annexed.” The subsequent allegations relate to the element of damage, and are not material to the question raised by the demurrer. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled below, and this appeal has been taken from the interlocutory judgment entered upon the decision.
The contract which is made a part of the complaint was entered into between the plaintiff and defendant on the 12th day of October, 1888. It provides that defendant thereby appoints the plaintiff “to procure applications .for assurance on the lives of individuals, and forward the same to the said society for its action, and for the purpose of collecting and forthwith paying over such premiums on .assurance as shall be directed by the said society, and for no other purpose whatsoever.” The plaintiff was under agreement to remain in the service of the defendant for a term of five years from October 1, 1886, subject, however, to the right on his part to annul this requirement upon the payment of a specified sum of money. The defendant, however, reserved to itself the right to terminate the contract at any time by giving the plaintiff written notice to that effect. The plaintiff also agreed that he would devote his whole time and all his energies to the service of the defendant, and to act exclusively for it so far as first to tender to it all risks obtained by him or under his control. He was to be paid by the defendant a “ compensation to be allowed on premiums on policies issued through the instrumentality of the said party of the second part [the plaintiff],” and elaborate provisions are made for the purpose of affording a measure for determining these commissions on the basis of the various kinds of insurance in which the defendant dealt. They were to accrue only as the premiums were paid to the defendant in cash, and were to continue to be paid to the plaintiff, his executors or administrators, for the term of twenty years from the date of each policy, while in force during said term. The contract also provided that the plaintiff should not be entitled to commissions on assurance unless, in the opinion of the president of the defendant, the same were fairly effected through the instrumentality of the plaintiff, and by him introduced to the society ; and in all cases where the claim to commissions was disputed the decision of said officer should be binding and conclusive. The plaintiff was also to perform such other necessary duties as might be required in connection with the general business of the society, without further compensation than the commissions which he was to receive as above stated. The sphere of his duties was the Hew York metropolitan district, but it was not assigned to him exclusively. The contract also contained other stipulations not deemed material to the disposition of the question before us."
From the summary thus given it is apparent that the plaintiff *81 assumed an obligation towards the company which involved the devotion of his entire time to its service, and the assumption of duties of considerable magnitude, involving, it may be inferred, the employment of a staff of employes, and the incurring of considerable expenditure. The defendant contends that under the contract it is under no obligation to the plaintiff to do anything except to pay him his commissions on the issuance of a policy. But if this contention is sound the company may continue to hold the plaintiff to his duties during the five years of obligatory service, while denying to him the means of livelihood, through a capricious and unreasonable refusal to accept any risks tendered by him. A contract must be so clear and certain as to admit of only such a construction, in order to justify a conclusion of such harshness. But we do not think the contract before us requires us to hold the plaintiff to any such unreasonable view of the duties he has undertaken and the rights he has acquired. In construing a written contract, it is the duty of the court to ascertain the true purpose and intent of the parties, placing itself as nearly as may be in their position, and availing itself of the light of attendant circumstances, and, without doing violence to obvious meanings arising from the text of the writing, to give a fair, just, and reasonable exposition of the compact, to the end that it may be fair, just, and reasonable in its operation and results to the contracting parties; for it is certainly not to be inferred that anything less than this could have been intended. In entering upon the engagement it is not to be doubted that both of the parties to the contract in question expected that the act of the plaintiff in forwarding applications for insurance would be followed by bona fide action on the part of the defendant upon the risk. The whole scheme of the contract—the complete surrender by the plaintiff of his whole time and skill to the service of the defendant—reasonably requires honest and intelligent action by the latter upon the risk offered, and we find no difficulty in holding that such was the obligation assumed by the defendant towards the plaintiff.
Now, what was the action contemplated? Clearly not that the defendant should thereupon accept the risk and issue its policy, for that would be giving the plaintiff the power to make the insurance and bind the defendant in that regard,—a power which, clearly, the contract does not confer. But it is plain that the defendant was entitled to the full and free exercise of judgment by the defendant in determining whether the risk offered was safe and desirable; and if it was considered undesirable the company had the right to reject it, and its judgment in that regard could not be reviewed. Life insurance is subject to such contingencies, and the merits of each individual risk are involved in such uncertainty, that ordinary prudence and the efficient management of the affairs of the company would seem to require that the officers of the defendant should be entirely free to accept or reject each application upon its merits. This construction does not conflict with any of the provisions of the contract, and must be considered as a condition of the business in reference to which the contract *82 was made. But, conceding all this, the plaintiff was none the less entitled to have the application in question treated in good faith, and seriously considered, in reference to its desirability as a risk to be assumed, from the standpoint of the interests of the company ; in other words, he was entitled to action, not disregard or evasion. How else are we to construe the action of the defendant in the case before us than as a -violation of this duty to the plaintiff? By demurring it admits the facts set forth in the complaint, which avers that Miner was able to pay the premiums on the policy applied for, and was physically and otherwise a good and desirable risk. "Upon such an admission as this the logical conclusion is that action should have been favorable, and the policy issued. The law requires that pleadings should be liberally construed with a view to their support, and the averment above mentioned, coupled with the statement of the refusal of the company to issue a policy, may fairly be taken to support the conclusion that the defendant had not acted upon the application upon, its merits within the meaning of the contract. The allegation as admitted fairly imports that the application was one which the defendant considei'ed to be acceptable and desirable, and upon which its policy might be issued with advantage, but which it rejected for reasons having no proper bearing upon the question, and which were not within the contemplation of the parties when the contract in suit was made. The" position of the defendant under the contract was one, not only of invitation to, but of positive injunction upon, the plaintiff, to seek and transmit to it applications for insurance, without limit as to amount, and his compensation was made dependent upon the success of his efforts. In fact, under the requirement of exclusive attention to the business of the company, his means of support were dependent upon the bona fide action of the company upon applications obtained by him. If, then, the company might uni-easonably disregard one, it might similarly treat all, and thus drive the plaintiff from its employment, and compel him to pay the forfeit exacted by the contract for the privilege of terminating it. Such a possible result seems to demonstrate the fallacy of the claim of arbitrary privilege in the defendant to disregard the services of the plaintiff, although worthy of the rewai'd comtemplated by the agreement. The fact that the plaintiff’s compensation is to be 'computed “on premiums on policies issued through the instrumentality of the plaintiff, and that they shall accrue only as the premiums are paid to said society in cash,” does not defeat a recovery because no policy was issued. The defendant cannot escape liability by claiming the benefit of a condition which results from its lack of good faith. Taylor v. Enoch Morgan's Sons Co., 124 N. Y. 184; 35 St. Rep. 68. In this case a commercial traveler agreed to travel and sell defendant’s goods, for which the latter agreed to pay him a commission on all orders accepted from bona fide purchasers; Certain of these oi’ders wez-e refused, and the agent brought suit to recover his commissions. The defense was that the oi'ders had not been accepted, and the commissions were there *83 fore not earned under the conditions of the contract. Upon this the court says:
“The referee allowed the plaintiff commissions upon orders from responsible parties which were not,accepted by the defendant. We incline to the view that it was the duty of the defendant to accept all orders presented by the plaintiff, from bona fide purchasers, which were made in accordance with the provisions of the contract, and that they did not have the right, without cause, to arbitrarily refuse to accept such orders. Such a construction of the contract would require the plaintiff to travel over the territory mentioned, at his own expense, six times a year, with a right on the part of the defendant to reject every order presented by him, and to thus deprive him of any commissions.”
While the two cases differ widely in their facts, the principle of the decision is broad enough to include the case at bar. The defendant’s counsel criticises the use of the words, “arbitrarily, and without reason, cause, or justification,” with which the plaintiff has characterized the refusal of the defendant to act upon the application, and claims that they state conclusions of law, and are therefore not admitted by the demurrer. It may be" conceded that, standing by themselves, the objection is well taken, but we are of the opinion that without them a prima facie case is stated under the liberal views respecting the construction of pleadings. In effect, the allegations of default on the part of defendant import that the risk offered was one which should have been accepted by the company, and upon which its policy should have been issued, but that its rejection was arbitrary and without color of justification. The construction of the contract which we have adopted involves no hardship to the company. It simply exacts good faith towards its agent. It does not require the acceptance of any application if, in the judgment of the officers of the company, the risk is not desirable; that is, one which the company is not willing to take, considering the question from the standpoint of the business interests of the corporation. If such action has been taken by them in the present case, it would be a defense which the defendant can and should present by answer. We express no opinion upon the measure of plaintiff’s recovery, as the question does not arise upon the issue before us. ±n view of the conclusion to which we have come, it follows that the order and interlocutory judgment overruling the demurrer should be affirmed, with-costs, with leave to the defendant to answer within twenty days, on payment of costs.
McAdam, J., concurs. Sedgwick, C. J., not participating.