FRIEDE v. WHITE CO.

(District Court, S. D. New York. July 26, 1917.)

1. PRINCIPAL AND AGENT ⊜⟶81(4)—MUTUAL RIGHTS AND LIABILITIES—AGEN-
CY FOR SALE ON COMMISSION—DUTY OF PRINCIPAL TO ACCEPT ORDERS.
    Defendant, an American manufacturer of motor trucks, contracted with
plaintiff who was engaged in selling such articles in Russia, that for a
period of two years "all business with the Russian government" should be
done through plaintiff, and to pay him a commission on such business.
*Held*, that such contract did not give plaintiff the right to demand ac-
ceptance of all orders he might procure from the Russian government,
but that defendant retained the right to control its own business and to
determine whether or not it would accept such orders, provided it
acted in good faith and in the exercise of its business judgment.

2. PLEADING ⊜⟶350(3)—MOTION FOR JUDGMENT ON PLEADINGS.
    On a motion for judgment on the pleadings a bill of particulars may
be read as a part of the pleading.

At Law.   Action by M. Sergey Friede against the White Company.
On motion for judgment on pleadings as to one cause of action alleged.
Motion sustained.

This is a motion under section 547 of the New York Code of Civil Procedure
for an interlocutory judgment upon the pleadings dismissing· the second
cause of action contained in the complaint.   This cause of action is in sub-
stance as follows:

Article First. That the plaintiff is a citizen of the state of New York and
resides therein.

Article Second. That the defendant is an Ohio corporation.

Article Third. That the plaintiff was engaged in the sale among other
things of motor trucks, their parts and accessories, in the then empire of
Russia, and that the defendant was engaged in the manufacture and sale of
such trucks and accessories.

Article Fourth. That at the city of Moscow, Russia, on the 9th day of
December, 1912, the defendant for good and valuable consideration entered
into a contract in writing with the plaintiff agreeing that it would give the
plaintiff the exclusive agency to sell its motor trucks and their accessories to
the Russian government for two years from the 1st of January, 1913, and
that all business pertaining to the sale of such trucks and their accessories
to the Russian government should be conducted through the plaintiff, and
that it would furnish to the plaintiff all such trucks and accessories manu-
factured by it which should be necessary to fill the orders of the Russian
government for the same, and that it would allow to the plaintiff on that ac-
count a commission of 30 per cent. off its catalogue prices on all such trucks;
that the plaintiff agreed to, and did, accept this agency from the defendant.

Article Sixth. That the plaintiff has performed all the conditions necessary
to be performed on his part, but that the defendant has refused to perform
those to be performed on its part.

Article Eighth.· That on the 1st day of December, 1914, the Russian gov-
ernment was ready and willing to give the plaintiff and the plaintiff to
accept an order for 610 3-ton trucks, 540 1½-ton trucks and 35 5-ton trucks
manufactured by the defendant, together with certain spare parts; that the
plaintiff notified the defendant of "said order" and of the readiness and
willingness of the Russian government to make the same, and requested the
defendant to supply such trucks and parts under the contract, but that the
defendant refused.

The plaintiff by order gave a bill of particulars of the contract, which
consisted of two letters from the defendant, set forth at length.   The first,
dated December 9, 1912, is as follows: "In consideration of your order for ten

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3-ton trucks I agree on behalf of the White Company that for a period of two years from January 1, 1913, all business with the Russian government shall be done through you. Should an arrangement be made with you later to represent our full line in Russia it is understood that you are not to accept any other American truck."

The second letter, dated February 14, 1913, stated the terms upon which the defendant would send on both pleasure cars and trucks, with the latter of which only we are here concerned. It gave the plaintiff certain catalogue prices at which he was supposed to sell, and inclosed a list of net prices at which cars would be sold to him, together with a description of the trucks, their weights and dimensions.

The question invited by the motion is whether the first letter of December 9, 1912, required the defendant to fill all orders transmitted to it by the plaintiff for trucks which the Russian government might order during the years 1913 and 1914.

Lindley M. Garrison, of New York City, for the motion.

Cyril F. Dos Passos and W. Benton Crisp, both of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). [1] The case, although large in amount, is in narrow compass. It depends wholly upon the meaning of the language:

"I agree * * * that for a period of two years * * * all business with the Russian government shall be done through you."

Does that mean "all sales which I shall conclude with the Russian government," or "all orders which you shall transmit"? Does it give the plaintiff an indefinite option on the defendant's production for two years regardless of the amount which he might require? The allegations themselves show that the Russian government was a large purchaser, ready to accept nearly 1,200 motor trucks in one order after the war arose. The case is quite different from one in which the seller authorizes a broker to sell a given piece of land or a limited amount of personal property. Baker Transfer Co. v. Merchants' Mfg. Co., 1 App. Div. 507, 37 N. Y. Supp. 276. Such contracts commit the seller to engagements of known amount; they do not subject him to the possibility of indefinite and enormous orders, which he must fill regardless of his capacity and his other demands. It would be strange if the defendant here had not retained the right to determine how many trucks it could spare for the Russian market, or how far it wished to deal with the Russian government. Otherwise it would have been impossible in apportioning its production to know how far it might be committed by indefinite contracts procured through the plaintiff. It might find its other trade more profitable; it might find the Russian government a factious customer and a slow debtor. I cannot suppose that it intended to give the plaintiff that control over its business by any such vague language as was used. On the contrary, the purpose of the two letters was no more than to give the plaintiff the right to the exercise of an honest business judgment.

The cases bear out this construction. In re English & Scottish Marine Co., McClure's Claim, L. R. 5 Ch. 737, the Court of Appeal held that an agreement to give an agent commission on all business was not violated when the company discontinued business. A different result

was reached in Horton v. Hall & Clark Mfg. Co., 94 App. Div. 404, 88 N. Y. Supp. 73, on nearly the same facts, except that the evidence permitted the jury to find an express agreement that the defendant would not sell out during the period, which in fact it did do. In Du Pont, etc., Co. v. Schlottman, 218 Fed. 353, 134 C. C. A. 161, it was part of the contract of sale that, if at the end of a year the defendant should be making powder at stated prices, the seller should get an added price. The defendant closed up the factory, and was held liable. Jacquin v. Boutard, 89 Hun, 437, 35 N. Y. Supp. 496, affirmed on opinion below in 157 N. Y. 686, 51 N. E. 1091, is the same, because the employer refused to give the broker those samples and price lists without which he could not go on. I mention these only to distinguish them. Whatever is the proper rule, they have nothing to do with the case at bar, because they all proceed on the theory that the seller has finally repudiated the contract and made it impossible for the agent to continue in the employment. They are not cases where he has refused a single order or a number of such, but leaves the agent still able to continue the employment as to other orders. Nearer to this case are cases like Taylor v. Enoch Morgan Sons Co., 124 N. Y. 184, 26 N. E. 314, in which the agent is allowed to recover for orders sent in and refused, though his contract gives him commissions only upon those accepted. Such was the result also in Madden v. Equitable Life Assurance Co., 11 Misc. Rep. 540, 32 N. Y. Supp. 752. In Re Ladue Tate Mfg. Co. (D. C.) 135 Fed. 910, Judge Hazel reached the opposite result because the employer had rejected the offer in the honest exercise of his judgment. Stone v. Argersinger, 32 App. Div. 208, 53 N. Y. Supp. 63, holds the employer liable, even though the rejections were because he could not fill the orders in "the usual course of business." The point involved a very trifling sum, and the case cannot stand upon the authority of Taylor v. Enoch Morgan Sons, supra, which professed to depend upon an arbitrary rejection of the order. The rule established by these cases when the employer rejects specific orders is this: The principal is bound to accept all orders sent in by the agent which in the exercise of an honest business judgment he would accept if he were actuated only by genuine business motives. The agreement is commercial, and presupposes that both sides will continue in good faith to prosecute the venture in which they have engaged. Nevertheless the principal does not place the conduct of his business in the hands of his agent or agree in advance that every order which the agent sends in must be accepted, regardless of his own judgment as to what business it will be profitable for him to transact. If it were so, the principal would have abdicated the conduct of his own affairs. If, on the other hand, the principal does not honestly exercise that judgment, but is moved by a desire to exclude the agent, or by any personal motive other than to prosecute his business with a sole eye to its success, he is responsible. This is what is meant by an "arbitrary" refusal of orders. This fact the agent must allege and prove, since prima facie the principal is presumed to be acting in accordance with the arrangement which gives him complete freedom as his judgment may dictate. As there is no such allegation in the complaint, it is bad as a pleading.

[2] As for the practice adopted, it is at least an open question whether or not the bill of particulars may be read along with the complaint. Dineen v. May, 149 App. Div. 469, 134 N. Y. Supp. 7; Kaufmann v. Hopper, 151 App. Div. 28, 135 N. Y. Supp. 363. Where the choice is open, no one can hesitate to read the bill of particulars, as a part of the pleading. Any other procedure is a technical absurdity.

The motion is granted. The judgment will dismiss the second cause of action on the merits unless the plaintiff pleads over within 20 days.