ARGUS COMPANY, Plaintiff, *v.* HELEN M. BRESLIN,
Defendant.

(Supreme Court, Albany Trial Term, April, 1919.)

**Verdict — when motion to set aside, and for a new trial, granted —
trial — contracts — evidence.**

Where the evidence on a trial to recover the sum agreed to
be paid by defendant for the insertion in plaintiff's library
edition of " New York State Men " a platinum process portrait,
a biographical study and autograph of her deceased husband,
conclusively establishes that in accordance with the contract,
a proof impression of the portrait was submitted, that the
biographical study was submitted for approval, with reference
to which defendant violated her part of the contract, and that
thereafter the portrait study and autograph were inserted in
said book, a verdict in favor of defendant is against the weight
of evidence and contrary to law, and a motion to set aside
the verdict and for a new trial will be granted.

MOTION to set aside verdict and for a new trial.

Andrew J. Nellis (Anna G. Dolan, of counsel), for
plaintiff.

J. William Atkinson, for defendant.

HINMAN, J.   This is a motion to set aside the ver-
dict and asking for a new trial in the above entitled
matter, which was tried at the March term of this
court and which resulted in a verdict of no cause of
action.

The action was brought upon a contract, which
provided as follows: " I hereby authorize you to
insert in your individual library edition of New York
State Men a platinum process portrait, a biographical
study and autograph of Mr. Thomas Breslin, for

which I agree to pay you or your order, the sum of $175, payable on submission of proof impression of the portrait, proof of the biographical study to be submitted for approval. It is expressly agreed that the Argus Company is not to be held for any statement, representation or condition not expressed in this order."

There is no dispute on the part of the defendant of facts urged by the plaintiff to the effect that the contract was signed by the defendant and that a proof impression of the portrait was submitted to her. The theory of the defendant upon the trial was that the biographical study had never been approved by her. Mr. Hills, witness for the plaintiff, testified that the biographical study was submitted to her and that she expressed herself as satisfied with the same on the date when he submitted to her the proof impression of the portrait.

The defendant, on the other hand, denied that she ever approved or expressed her satisfaction with the biographical study. Referring to the time when Mr. Hills came to her house, when she admits she saw the proof impression of the portrait but denies seeing any writing at all, she testifies that she had asked Hills if he was the man who importuned Mr. Breslin to have Mr. Breslin's history published in another and former publication and that Hills had said he was not that man. After admitting that on the occasion of Mr. Hills' call at her house, she had asked to see her contract and after receiving it told Mr. Hills that she did not intend to give it back to him, she was asked by counsel what was said before that, which caused her to say she did not intend to return the contract. She replied: " Because then I asked him if he was the man that had done the work for Mr. Breslin, and he said no. And I knew that he was. I

knew that he told a lie. And I didn't care to enter into any more of the work with him. I was afraid of him.''

Incidentally it may be noted here that, on cross-examination, she admitted that the previous work had been satisfactory to her and Mr. Breslin, as far as she knew.

Continuing her testimony, relating to the same occasion of Hills' call at her house, she testified as follows: '' Q. What did you say to him about that photograph? A. I told him he had lied to me, and I didn't propose to have anything more to do with him, and I ordered him out of the house. Q. Did you put him out? A. I put him out, yes, Judge; that I didn't want to have anything more to do with him. I had no faith that he would carry out the contract. Q. Did you tell him that you approved of that picture? Or these other things? A. No, Judge, I didn't see it. I didn't see the writing at all. I simply glanced at the photograph.''

The defendant admits, however, that she subsequently met Mr. Hills on a street in Waterford and she says: '' He importuned me to take the writing and read it. He said he had this writing all ready for my approval and he wished me to read it over. I said my decision was then, as it was at all times, to have nothing whatever to do with him.''

The defendant contends that under the contract she was under no obligation to pay the plaintiff the agreed sum of $175, or any sum, if in fact she did not approve the biographical study. If this contention be a sound interpretation of the contract, the defendant could permit the plaintiff to undergo expense and loss of time in preparing the proof impression of the portrait, proof of the autograph and of the biographical study, while denying to the plaintiff the right to any compensation through a capricious and

unreasonable refusal on the part of the defendant either to approve or disapprove the biographical study, when it was submitted to her for such action upon her part. Under such an interpretation of the contract, the defendant could, by mere whim or caprice, prevent the plaintiff from altering the " study " to meet any reasonable criticisms, or adopt any reasonable improvements thereof, that might be made or demanded by the defendant, thus arbitrarily preventing the plaintiff from completing the performance of its part of the contract.

As was said in *Madden* v. *Equitable Life Assur. Soc.,* 11 Misc. Rep. 540, 542: "A contract must be so clear and certain as to admit of only such a construction in order to justify a conclusion of such harshness. * * * In construing a written contract it is the duty of the court to ascertain the true purpose and intent of the parties, placing itself as nearly as may be, in their position, and availing itself of the light of attendant circumstances, and, without doing violence to obvious meanings arising from the text of the writing, to give a fair, just and reasonable exposition of the compact to the end that it may be fair, just and reasonable in its operation and results to the contracting parties, for it is certainly not to be inferred that anything less than this could have been intended."

What is the meaning of the provision of the contract whereby the defendant agreed to pay " the sum of $175, payable on submission of proof impression of the portrait, proof of biographical study to be submitted for approval? "

It is clear that the Argus Company was bound to submit a proof impression of the portrait. Also, the Argus Company was bound to submit the biographical study for approval. If effect is to be given to each word of this clause of the contract, something more

Supreme Court, April, 1919.          [Vol. 107.

was required than the mere submission by the Argus Company of the proof of the biographical study. It was contemplated that it should be presented to Mrs. Breslin for her approval. Thereupon it was her right to approve or disapprove. This right, however, could be waived by her, either expressly, or by way of estoppel. If the " study " was defective, because of inaccuracies, or for any other proper cause, she had the right, under the contract, to require suitable correction or improvement of the " study." She had no right to prevent the completion of performance of the contract by the Argus Company by arbitrarily refusing either to approve or disapprove. This was the effect of her action. She gave no reason for not going on with the work, except that the agent Hills had lied to her in relation to a matter foreign to the contract in question. By urging that as the ground of her action, she is estopped from asserting that she had other grounds for disapproval.

Not to prevent performance by any other party is an implied condition of every contract. *Patterson* v. *Meyerhofer,* 204 N. Y. 96; *Young* v. *Hunter,* 6 id. 203.

The defendant was permitted, under the contract, to disapprove of the " study," but only upon its merits. *Madden* v. *Equitable Life Assur. Soc.,* 11 Misc. Rep. 540.

Moreover, it is only reasonable to suppose that the contract impliedly reserved to the plaintiff the right to make suitable corrections and improvements to the "study," in order that any meritorious objections might be met and the plaintiff thus given an opportunity to perform its part of the contract. The plaintiff had the right to expect the proof of the biographical study, when submitted, to be treated in good faith upon its merits. Certainly it was not contemplated that the defendant should be permitted to disregard or evade her right or duty as to approval by action

unrelated to the " study " and foreign to any consideration of it upon its merits.

Since the defendant, by her own admission, refused to examine the proof of the " study " for the purpose of approval, when the plaintiff's agent offered to submit it to her for that purpose, there was no course for the plaintiff to pursue, other than to proceed to print the portrait, autograph and sketch, as it has done, and the defendant is now estopped from asserting at this time her failure to do her part under the contract.

The evidence having conclusively shown that a proof impression of the portrait was submitted, that a biographical study was submitted for approval, with reference to which the defendant violated her own duty, and that thereafter the portrait, biographical study and autograph of Mr. Breslin were inserted in the library edition of New York State Men, the verdict for the defendant was against the weight of evidence and contrary to law and the same should be set aside and a new trial granted. The motion for a new trial is granted, without costs.

Motion granted, without costs.