## THEATRE REALTY CO. et al. v. ARONBERG–FRIED CO., Inc.

### No. 10439.

Circuit Court of Appeals, Eighth Circuit.
Aug. 31, 1936.

William O'Herin, of St. Louis, Mo. (Guy A. Thompson, Rhodes E. Cave, John S. Leahy, Harold F. Hecker, Bryan, Williams, Cave & McPheeters, and Leahy, Walther, Hecker & Ely, all of St. Louis,. Mo., on the brief), for appellants.

Fred L. English, of St. Louis, Mo. (Fred L. Williams and Earl F. Nelson, both of St. Louis, Mo., and Lewis Hord Cook, of Jefferson City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a suit in equity by a contractor for the specific performance of a building contract, to recover a balance of $7,058.77 of the contract price, and to subject to the payment of such balance a trust fund in the possession of the St. Louis Union Trust Company. There was a judgment and decree for the plaintiff, Aronberg-Fried Company, Inc. The case is here on a joint appeal by the defendants Theatre Realty Company, St. Louis Union Trust Company, Trustee, and J. T. Blair and Edmond Koeln, receivers for the said Theatre Realty Company.

The defendants Blair and Koeln, receivers, were appointed by the state court in a proceeding to foreclose the trust deed given by the Theatre Realty Company to the St. Louis Union Trust Company as trustee to secure payment of the bonds the proceeds of which constitute the trust fund a part of which plaintiff seeks to reach in this suit.

As grounds for reversal the appellants in argument urge three assigned errors of the trial court, one a finding of fact and two being conclusions of law. They are:

(1) First, the finding of the court that all documents and certificates required by a certain deposit agreement to be furnished to the trustee before it was bound to pay the plaintiff had been furnished before August 18, 1931, except the request or certificate of the Theatre Realty Company, and that as to such certificate that Company was recalcitrantly and without valid excuse refusing to certify.

(2) Second, the conclusion of law that the recalcitrant refusal of the Theatre Realty Company to certify, all other things being done, did not justify the trustee in refusing payment.

(3) And, third, the conclusion that the deposit agreement constituted a promise for the benefit of plaintiff and an equitable assignment of the fund in its favor.

The circumstances pertinent to the issues on appeal may be briefly summarized. On the 9th day of March, 1927, the plaintiff and the Theatre Realty Company (hereinafter called the Company) entered into a contract "as of the 14th day of December, 1926," by the terms of which the plaintiff as contractor undertook to furnish the material and labor and to construct for the Company a building, known as the Fox Theatre and Office building, in St. Louis, Mo., for cost and a fee of 6 per cent. of the cost. The plaintiff entered upon the performance of the contract, and the building was completed according to the plans and specifications of the architect on the 6th day of March, 1929. The plaintiff received payments pursuant to the terms of the contract aggregating $2,977,954.27, leaving an undisputed balance due of $7,058.77, to recover which this suit was brought.

For the purpose of securing funds to pay for the building the Company, on March 8, 1927, entered into a contract with Halsey, Stuart & Co., Inc., called for brevity the Banker, by the terms of which the Company agreed to issue and did issue its bonds in the amount of $4,550,000, and the Banker purchased said bonds for $4,140,-500, and accrued interest from October 1, 1927. The bonds were secured by a deed of trust conveying the lands on which the

buildings constructed by plaintiff are located to the defendant St. Louis Union Trust Company, as trustee.

On the day the bonds were issued, October 1, 1927, the Company, the Banker, and the trustee entered into a written contract, denominated a deposit agreement. The plaintiff was not a party to this contract, but D. G. Aronberg of the plaintiff Company was familiar with the arrangements provided for therein. The deposit agreement recited that the proceeds of the bonds in the sum of $4,140,500 and accrued interest had been deposited with and accepted by the trustee; that the Company was about to erect a theater and commercial building upon the premises mortgaged to secure the bonds, and:

"Whereas in said indenture (trust deed) the Company has covenanted to erect, complete and equip the said building and to pay in full for the same and requires the proceeds of said bonds for that purpose; * * * it is agreed as follows: * * *

"The Company expressly covenants to pay for said building * * * not later than thirty days after the completion of said building, * * * unless the Company shall properly refuse to pay any bill or item in dispute and notice to that effect, together with a statement of the facts pertaining thereto shall be promptly given by the Company to the Trustee and the Banker, together with a joint certificate of the Architect and the Supervising Architect that such bill or item is properly in dispute and contested by the Company; in such event an amount equivalent to such bill or item in dispute shall be withheld by the Trustee pending the determination thereof. * * *

"Second: The Trustee shall hold and disburse said sum of Four Million One Hundred Forty Thousand Five Hundred Dollars ($4,140,500.), and accrued interest from October 1, 1927, and any additional moneys which shall be received by it, and the disposition of which shall not otherwise in this agreement be specifically provided for, as follows:

"(a) The Trustee shall at once reserve and set aside the sum of Four Hundred Forty Three Thousand Six Hundred Twenty-five Dollars ($443,625.), being an amount equal to eighteen months' interest upon the bonds accruing to and including April 1, 1929, to which shall be added the accrued interest from October 1, 1927, paid by the Banker as aforesaid. * * *

"(b) The balance of said moneys shall be reserved and held by the Trustee as a trust fund to be disbursed and applied by the Trustee for the payment of the construction costs of said building and carrying charges, meaning thereby, all sums payable to contractors or other persons who have rendered services or furnished labor or material or other property required in the erection and equipment of said building and carrying charges set forth in Schedule B. Such payments on account of construction costs and carrying charges shall be made by the Trustee in monthly installments upon the written request and order of the Company executed by a duly authorized officer thereof and having the corporate seal affixed thereto, and upon the filing with the Trustee with such request of the following:

"1. A certificate of said architect and the supervising architect. * * *

"2. A certificate from the New York Title & Mortgage Company or Title Guaranty Trust Company of St. Louis, that there are no liens or encumbrances of record on said premises superior to the lien of said indenture. * * *

"3. With each such request, except the first, vouchers approved by the architect and by the supervising architect showing the disposition of the amount of the next previous request in the manner therein stated. * * *

"Final payment on account of construction cost as herein defined shall be made by the Trustee from the balance of the moneys in its hands, subject to such deductions as may be otherwise provided for in this agreement, only upon the filing with the Trustee of:

"1. A written request of the Company executed by a duly authorized officer having its corporate seal affixed.

"2. A final certificate signed by the architect and the supervising architect. * * *

"3. An opinion of counsel satisfactory to the Trustee and the Banker that the time for filing liens for labor and materials has expired. * * *

"4. A certificate by the New York Title and Mortgage Company or Title Guaranty Trust Company of St. Louis that said building and mortgaged premises are subject to the lien of said indenture securing said bonds free from all other liens or encumbrances of any kind prior thereto. * * *

"5. Evidence satisfactory to the Trustee and the Banker of the issuance of the usual certificates from all governmental and other authorities of the City of St. Louis, Missouri, having jurisdiction thereof and the Board of Fire Underwriters. * * *

"The Company shall not have the right to require any such payments in this section or said indenture provided to be made if it shall be in default under any of the provisions hereof or of said indenture (trust deed)."

■ During the construction of the building, the monthly payments to the plaintiff were made by the Trustee upon the furnishing of the certificates provided for under clause (b) of the second paragraph of the deposit agreement. The dispute arises in connection with the provision relating to the "Final payment on account of construction cost." It will be observed that such final payment was to be made by the Trustee upon filing with it five different documents described severally in the contract. The trial court found that all of such documents, except the first, the request of the Company, were "duly furnished to the Trustee on or before August 18, 1931." The appellants claim that the court erred in so finding because the evidence shows that the certificate of the architect with reference to partial payments required by paragraph 1 under clause (b) in the second division of the contract was not on file at that time. The trial court's finding in this respect is not subject to criticism. The certificate referred to was not required by the terms of the contract as a condition for "final payment."

On October 1, 1931, default in payment of interest on the bonds occurred, and under the accelerating clause the principal was declared due on December 17, 1931. Paragraph "Seventh" of the deposit agreement provided that in such an event any balance then in the hands of the Trustee should be held for the benefit of the bondholders. It is admitted that the "written request of the Company" provided for in paragraph 1 under the provision for final payment has never been furnished to the Trustee. It is the contention of appellants that, this being true, the "Seventh" paragraph of the deposit agreement is controlling and that any right which the plaintiff may have had to payment out of the trust fund terminated.

Upon this point the trial court found as a fact that: "When all certificates and documents save that of the Company, which I find was recalcitrantly and without valid excuse refusing to certify, had been furnished to the trustee on August 18, 1931, no default on the bonds had occurred." And, as a conclusion of law, it was held that the recalcitrant refusal of the Company to sign the required certificate did not justify, in equity, the refusal of the Trustee to pay, nor warrant it in holding the balance due plaintiff in dispute, for the benefit of the bondholders, when all other requirements had been complied with, and this more than two years after the building had been completed and approximately four months before the default was declared. The court reasoned further: "It is a trite, but a true and living maxim of equity, that equity deems that as done which ought to have been done. So, if plaintiff complied with all documentary conditions, except one, withheld without warrant in law or fact, the refusal of the Trustee to pay before a default five months later, would not cause a reverter in equity, however much it might have justified the Trustee in refusing, had it been sued at law."

The question here for determination is whether, despite the withholding by the Company of the certificate required of it as a condition of making final payment to the plaintiff by the trustee, any equitable right of plaintiff to receive payment out of the fund in the hands of the trustee attached to that fund prior to December 17, 1931, when the principal of the bonds was declared due under the accelerating clause.

Upon this question the appellants contend that no such equitable right existed, because the "Seventh" paragraph of the deposit agreement provided that: "Seventh: In the event of any default under the terms of said indenture by which the principal of the said bonds shall be declared to be due and payable, the Trustee shall retain as Trustee under said indenture any balance of said deposit then remaining in its hands to be held and applied by the said Trustee for the benefit of said bondholders pursuant to the terms of the said indenture."

On the other hand, the plaintiff contends and the trial court found, that the promise of the Trustee and the agreement of the Company to reserve and hold the balance of the proceeds of said bonds, after deduct-

ing interest for 18 months thereon, "as a trust fund to be disbursed and applied by the Trustee for the payment of the construction costs of said building and carrying charges, meaning thereby all sums payable to contractors," etc., constituted an equitable assignment of the fund in favor of the plaintiff in the amount of such "construction costs."

The evidence supports the trial court's finding that the Company had no valid excuse for withholding the certificate of "request" required of it as a condition of making final payment to the plaintiff by the Trustee. The Company covenanted "to pay in full" for said building and "not later than thirty days after the completion" thereof. The record shows that as early as August 5, 1931, and at frequent intervals thereafter, the plaintiff was requesting payment. A special request was made in a letter from the plaintiff to the Trustee under date of August 18, 1931. H. J. Miller, an officer of the Trustee, testified that payment was withheld solely because the request of the Company had not been filed. At that time there remained in the hands of the Trustee approximately $76,000.

■ Since there was no excuse for the Company's failure in this respect, equity will regard that as done which ought to be done for the purpose of effecting justice. This rule has been applied by the Supreme Court of Missouri for the purpose of creating a lien on real estate to secure a loan where the borrower neglected to execute a mortgage. Johnson v. Brill (Mo.Sup.) 295 S.W. 558, 562. It has been so held to give a depositor a preference where a bank refused to pay a check presented by him and the bank afterwards failed. Thomson v. Bank of Gerster (Mo.App.) 74 S.W.(2d) 74, 75; Johnson v. Farmers' Bank of Clarksdale, 223 Mo.App. 513, 11 S.W.(2d) 1090, 1092. The rule has been frequently applied to effect a change of beneficiary under a life insurance policy where the assured has done everything possible to conform to the terms of the policy and dies before the formal and ministerial acts of the officers of the insurance company have been performed. Mutual Life Ins. Co. of New York v. Corodemos et al. (D.C.Mass.) 7 F. Supp. 349, 351; Farley v. United States (D.C.Or.) 291 F. 238, 241; Kochanek v. Prudential Ins. Co., 262 Mass. 174, 159 N. E. 520, 522; 4 Cooley, Briefs on Law of Insurance, 3769. The same rule is applied where an architect or engineer refuses to furnish a certificate of completion of a construction contract without excuse where the contract makes such certificate a condition precedent to final settlement. MacKnight Flintic Stone Co. v. Mayor, etc., of New York, 160 N.Y. 72, 54 N.E. 661, 665; Thomas v. Stewart, 132 N.Y. 580, 30 N.E. 577; City of Elizabeth v. Fitzgerald (C.C. A.3) 114 F. 547; 9 C.J. 963.

■ Thus the law is clear that an equitable right in favor of the plaintiff attached to the trust fund to the extent of the final payment while the money was still in the possession of the Trustee and before the provisions of the seventh paragraph of the deposit agreement became operative on account of the default. Nothing is to be gained by any quibble over the nature of such equitable right. There is present here every element of a conditional equitable assignment, and also of an equitable lien.

Viewed first as a conditional equitable assignment, it will be noted that the money was actually and completely turned over to the Trustee for the benefit of the plaintiff, because his contract was then in existence, subject only to the condition that the "request" of the Company and the other documents enumerated in the deposit agreement should be on file with the Trustee before the "construction costs" should be applied. The Trustee had notice of the acceptance by the plaintiff of the arrangement, and it could not thereafter be revoked. Since we hold, therefore, that under the circumstances the condition must be considered as performed, the equitable assignment was complete before the default on the bonds was declared.

We need not here discuss the law of equitable assignment at length. This court has recently considered that subject in State Central Savings Bank v. Hemmy, 77 F.(2d) 458, in an opinion by Judge Stone, and in Tobin v. Insurance Agency Co., 80 F.(2d) 241, 243, in an opinion by Judge Gardner. See, also, Story, Commentaries on Equity Jurisprudence, §§ 1045, 1046. We agree with the trial court that the facts of this case do not bring it within the rule of Christmas v. Russell, 14 Wall.(81 U.S.) 69, 20 L.Ed. 762, and Dillon v. Barnard, 21 Wall.(88 U.S.) 430, 22 L.Ed. 673, relied upon by appellants.

■ Again, if this transaction is considered from the beginning, an equitable lien in favor of the plaintiff attached to the trust fund from the time the building was

completed and accepted, or at least after all claims for material and labor had been paid and the time for filing mechanics' liens had expired. The evidence abundantly shows that plaintiff relied from the beginning upon the trust fund for his pay and not upon the Company. In addition to the circumstances already set out it should be noted that Halsey, Stuart & Co., the Banker, executed an agreement with the Company under date of March 8, 1927, agreeing to purchase the bonds afterwards issued by the Company and to deposit the purchase price with the Trustee to assure the construction of the buildings upon the premises mortgaged to secure the bonds. The contract with the plaintiff was executed the following day, March 9, 1927. D. G. Aronberg of the plaintiff company testified that he sat in conferences and was told and knew where the money would be for the payment of the building. He did not know that the Company was organized with a capital of only $2,000; but he testified: "I knew when I went into this project that the money to pay for the construction was going to be put in escrow with the St. Louis Union Trust Company, and that is all that will interest a contractor when he takes a contract to build a building."

The deposit agreement, dated October 1, 1927, refers to the contract of March 8, 1927, and recites that the proceeds of the bonds have been deposited with the trustee in the amount of $4,140,500, to be held as a trust fund and applied to the construction costs of the building.

The purpose of the deposit agreement was unquestionably primarily for the benefit of the bondholders, represented in the contract by the Banker. Its purpose was to protect the security for the bonds by providing an arrangement which would insure the completion of the building free from mechanics' liens. Under the statutes of Missouri (Mo.St.Ann. § 3156 et seq., p. 4972 et seq.) all those furnishing material and labor for use in such a building were entitled to a lien to be effected by filing a required verified statement with the proper county official. The plaintiff and its subcontractors might have filed such liens, and the contract provided that in any such case the trustee should pay them out of the fund in its hands. The plaintiff, relying upon the arrangement in the deposit agreement which had been adhered to during the period of construction, did not file such lien. It is clear, therefore, that the

bondholders will not be injured by the decree ordering payment to the plaintiff, because the completion of the building according to the specifications gave them the security for which they contracted and which it was agreed they should have. To give them now the $7,058.77 due the plaintiff would be to enrich them at its expense.

■ These circumstances embody all the elements of an equitable lien, which is the right to have property subjected in a court of equity to the payment of a claim. Aldrich v. R. J. Ederer Co., 302 Ill. 391, 134 N. E. 726, 728. "It is simply a right of a special nature over the thing, which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action." 3. Pomeroy, Eq.Jur. (4th Ed.) § 1233. After pointing out that such liens may originate in express contracts, Pomeroy (Section 1239) observes that the rule is not limited to specific agreements, for, "in addition to the general doctrine that equitable liens are created by executory contracts which in express terms stipulate that property shall be held, assigned, or transferred as security for the promisor's debt or other obligation, there are some further instances where equity raises similar liens without agreement therefor between the parties, based either upon general considerations of justice (ex aequo et bono) or upon the particular equitable principle that he who seeks the aid of equity in enforcing some claim must himself do equity."

In the Tobin Case, supra, Judge Gardner said: "A lien is distinguished from an assignment in that it is a charge upon property, while an assignment creates an interest in property. An equitable lien is unlike an equitable assignment because the lien, although not a title, is nevertheless a charge or security upon property."

Under circumstances similar to those present in this case courts of equity have frequently established and enforced liens against funds intended as here, to pay for the construction of improvements on premises mortgaged to secure such funds. In Smith v. Anglo-California Trust Co., 205 Cal. 496, 271 P. 898, a realty company borrowed $20,000 secured by trust deed to pay for the construction of improvements upon the property conveyed by the trust deed as security for the loan. When the building was finished, there remained in the fund unexpended the sum of $4,090. Since the money had been borrowed for the purpose

of paying for the improvement, the Supreme Court of California held that the contractors who had furnished labor and materials were entitled to an equitable lien upon the whole sum for their unpaid claims on the ground that it would be inequitable and unjust to do otherwise, since the securities company claiming the fund might be said by its conduct in setting up the fund for building purposes to have induced the claimants with their labor and materials to enhance the value of the security of the mortgage. See, also, Blinn Lumber Co. v. Los Angeles County, 216 Cal. 474, 14 P. (2d) 512, 84 A.L.R. 1304.

In Town of Covington v. Alonzo B. Hayden, Inc. (C.C.A.5) 27 F.(2d) 360, the contractor was held to have an equitable lien upon the proceeds of bonds sold for the purpose of paying for the construction of the improvements under the contract. See, also, Sexton v. Kessler & Co., 225 U. S. 90, 32 S.Ct. 657, 659, 56 L.Ed. 995; National Surety Co. v. Board of Education of McDowell County (C.C.A.4) 15 F.(2d) 993, 994; Tobin v. Insurance Agency Co. (C.C. A.8) 80 F.(2d) 241, 243; Barnes v. Alexander, 232 U.S. 117, 119, 34 S.Ct. 276, 58 L.Ed. 530; Johnson v. Brill (Mo.Sup.) 295 S.W. 558, 562; Hadley v. Passaic Nat. Bank & Trust Co., 113 N.J.Eq. 548, 168 A. 38, 39.

In the Sexton Case, supra, Mr. Justice Holmes, speaking for the Court, said: "While the phrase 'equitable lien' may not carry the reasoning further or do much more than express the opinion of the court that the facts give a priority to the party said to have it, we are of opinion that the agreement created such a lien at least; or, in other words, that there is no rule of local or general law that takes from the transaction the effect it was intended to produce. Hurley v. Atchison, Topeka & Santa Fe Ry. Co., 213 U.S. 126, 134, 29 S. Ct. 466, 53 L.Ed. 729, 734."

So in this case there is no rule of law "that takes from the transaction the effect it was intended to produce." And clearly the intent of the parties, as expressed in the deposit agreement, was to "reserve" the fund held by the Trustee for the payment of "all sums payable to contractors or other persons who have rendered services or furnished labor or material or other property required in the erection and equipment of said building." This purpose and intent would not be accomplished unless the plaintiff's claim be paid out of said fund.

As said further by Mr. Justice Holmes in the Sexton Case, supra: "Their [the parties to the transaction] conduct should be construed as adopting whatever method consistent with the facts and with the rights reserved is most fitted to accomplish the result." At the time plaintiff was entitled to payment in August, 1931, there had been no default of the Company on the bonds, and, consequently, there was then no "right reserved" that would frustrate the payment to the plaintiff.

We conclude that an equitable right attached to the trust fund in favor of the plaintiff to the extent of the balance due on the construction contract, entitling it to recover in this case, whether such right be considered as an equitable assignment or as an equitable lien.

Other questions are discussed in argument, but, in the view we have taken of the case, they are all immaterial.

For the foregoing reasons, the judgment and decree of the District Court is affirmed.