WILLIAMS et al. v. GREEN BAY & WESTERN R. CO.

No. 207.

Circuit Court of Appeals, Second Circuit.

Feb. 9, 1945.

FRANK, Circuit Judge, dissenting.

———◆———

Unger & Pollack, of New York City (Milton Pollack and Ludwig Mandel, both of New York City, of counsel), for appellants.

Cadwalader, Wickersham & Taft, of New York City (Merrill M. Manning and Walter Bruchhausen, both of New York City, of counsel), for appellee.

Before CHASE, HUTCHESON and FRANK, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought by appellants on behalf of themselves and other holders of Class B deben-

tures[1] against appellee, a corporation organized and existing under the laws of Wisconsin, the suit sought judgment for $809,618.85 alleged to belong to the holders of the debentures as their share of the undistributed and withheld net earnings of defendant for the years 1924 to 1943, inclusive. It was alleged that the debentures constituted a fixed and binding contract for the appropriation and payment to the holders, of the net earnings; that the provision[2] requiring action by the directors was a mere formality; that during the years in question the net earnings applicable to Class B debentures had aggregated $1,649,618.15; that though in each year ex-

---

[1] This is the form of the debenture sued on:

UNITED STATES OF AMERICA
GREEN BAY AND WESTERN
RAILROAD COMPANY
STATE OF WISCONSIN

$1000.                    No. ....

CLASS B DEBENTURE

The Green Bay & Western Railroad Company hereby certifies that this is one of a series of Seven thousand of its Class B Debentures in the sum of One Thousand Dollars each, aggregating in all the sum of Seven Million Dollars, which sum of One Thousand Dollars will be payable to the bearer hereof, or if registered, to the person appearing on the books of the said Company as the last registered owner hereof, only in the event of a sale or reorganization of the Railroad and property of said Company, and then only out of any net proceeds of such sale or reorganization which may remain after payment of any liens and charges upon such railroad or property, and after payment of Six hundred thousand Dollars to the holders of a series of debentures known as Class A, issued or to be issued by said Company, and the sum of Two Million, five hundred thousand Dollars to and among the stockholders of said Company. Any such net proceeds remaining after such payments shall be distributed pro rata to and among the holders of this series of Class B Debentures. The said Railroad Company Hereby Covenants and Agrees that no mortgage shall at any time be placed upon its railroad and other property, nor shall the same be leased or sold without the consent of the holders of seventy five per cent of the capital stock outstanding at the time of such mortgage lease or sale. The said Railroad Company Hereby Agrees that until such payment, the holders of this Series of Debentures shall in lieu of interest thereon participate in the distribution of annual net income to the following extent, viz.,—So much of the annual net earnings of the said Company in any years as would be applicable to the payment of dividends on stock shall be applied as follows, viz.,— To the holders of Class A Debentures 2½ per cent upon the face value thereof, or if such annual net earnings are insufficient for the payment of the same, then all such net earnings shall be distributed pro rata among the holders of said Class A Deben-

tures. After the payment of 2½ per cent upon the face value of Class A Debentures, the stockholders of the Company are entitled to receive the balance of such net earnings until 2½ percent shall have been paid out of the same upon the par value of the said stock, and all surplus net earnings then remaining shall be paid to the holders of Class A Debentures and of the stock pro rata until five per cent shall have been paid upon the face value of said Debentures and upon the par of said stock for such year, and any surplus net earnings arising in such year which may then remain shall be paid to and distributed among the holders of Class B Debentures pro rata. None of such payments shall be cumulative. The amounts, if any, payable upon this series of debentures out of the net earnings in any year, will be fixed and declared by the Board of Directors on or before the first day of February, in the following year, and when so declared, any amount payable hereon will be paid at the office or agency of the Company in the City of New York on or before the first day of March, in such year to the holder of this debenture, upon its production at such office or agency in order that such payment may be stamped hereon; or, if registered, payment will be made by check mailed to the person appearing on the books of this company as the registered owner hereof at the last address furnished by him to this company. This debenture shall pass by delivery unless registered on the books of the Company at its office or agency in the City of New York, and when so registered, and registry noted hereon, title thereto shall pass only by assignment executed by the last registered owner and noted on such register. This instrument shall not be valid for any purpose unless authenticated by the signature of the Farmers' Loan and Trust Company to the certificate endorsed hereon.

[2] "The amounts, if any, payable upon the debentures out of the net earnings in any year will be fixed and declared by the Board of Directors on or before the first day of February in the following year, and when so declared any amount payable will be paid at the office or agency of the company in New York on or before the first day of March in each year to the holder of the debentures."

cept the years 1932, 1933 and 1934, the defendant had distributed part of the applicable net earnings in the aggregate sum of $840,000, it had in each year withheld portions thereof and passed them to surplus; and that such sums, so wrongfully passed to surplus instead of being paid on the debentures, now aggregated the sum for which plaintiffs sued.

The defendant met the suit with two motions to dismiss. In one of them, the ground taken was lack of jurisdiction over the person of the defendant for want of proper service on it. In the other it was that, in the exercise of a sound discretion, jurisdiction of the action should not be assumed because its subject matter was concerned with the internal affairs of a corporation foreign to the state of suit.

Affidavits and counter affidavits having been filed and heard on the motions, the district judge, holding that the defendant was present in the district and was properly served, denied the first motion. Of the opinion though that the suit concerned the internal affairs of the defendant corporation and could be better tried in Wisconsin, the state of its incorporation, the district judge, on the authority of Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720; Cohn v. Mishkoff-Costello Co., 256 N.Y. 102, 175 N.E. 529; Cohen v. American Window Glass Co., 2 Cir., 126 F.2d 111, exercised his discretion to dismiss the suit without prejudice to its being renewed in Wisconsin.

Appellants are here insisting that the doctrine of forum non conveniens, on which the dismissal was based, was not properly applied, that discretion was abused in dismissing the suit, and, because it was, the judgment must be reversed. We do not think so.

If we could agree with appellants' assumption that the suit involved nothing except a claim upon a liquidated demand, that in short the contract of the Class B debentures operated of itself to set apart and appropriate each year to those debentures the specific sums plaintiffs sue for, and that the fixing and declaration of the amounts by the Directors was a mere formality, we should agree that jurisdiction ought not to have been declined. But we think it clear that this is an over-simplified view of what the debentures intended to, and did, provide. The provision for declaration and payment of sums due annually under the debentures, as well as the long continued practice under it for the many years in question, leave in no doubt, we think, that before any sums became due and payable under the debentures, corporate action had to be taken to fix and determine them. Instead of carrying a fixed rate of interest, the debentures promised, in lieu thereof, a contingent portion of the annual net earnings, this interest to· be ascertained, fixed and declared in each year by the directors. According to the claim, the directors in each of the years but three fixed and declared, and the appellee paid the amounts determined to be due. If, therefore, support were needed for the view that the provision in the debentures, that the sums, if any, due were to be fixed and declared by the directors, meant just that, the long practise in accordance therewith and the long acquiescence of the debenture holders in that practise would provide it. The question before us is not one of jurisdiction but one of the exercise of judgment as to which would be the most convenient forum. In the circumstances this case provides, it seems quite clear to us that in declining jurisdiction and remitting the parties to that of Wisconsin, where both corporation and directors can be sued and all matters governing the rights of the corporation and the holders of its securities can be determined under the laws of that state, the court used, it did not abuse, its discretion. Its order dismissing the action without prejudice to the right to renew it in Wisconsin is accordingly affirmed.

FRANK, Circuit Judge (dissenting).

1. To explain my reasons for dissenting, it is first necessary to state some of the facts more fully than they are stated in the majority opinion.

The debentures provide: "After the payment of 2½ per cent upon the face value of Class A Debentures, the stockholders of the Company are entitled to receive the balance of such net earnings until 2½ per cent shall have been paid out of the same upon the par value of the said stock, and all surplus net earnings then remaining shall be paid to the holders of Class A Debentures and of the stock pro rata until five per cent shall have been paid upon the face value of said Debentures and upon the par of said stock for such year, and *any surplus net earnings arising in such year which may then remain shall be paid to and distributed among*

the holders of Class B Debentures pro rata."[1]

It is undisputed that the amount required annually for the preferential payment to holders of defendant's stock and Class A Debentures aggregated $155,000 (i.e., $125,000 for the stock and $30,000 for the Class A Debentures). In each of the years 1924 to 1943, inclusive, excepting 1932–1934, defendant, after paying this $155,000, had additional net earnings which aggregated $1,649,618.85. In those years, out of such additional net earnings, defendant paid to the Class B Debentures only $840,000, leaving an unpaid balance of $809,618.85. The figures, in detail for each of those years, are not at all in doubt; they appear in exhibits B and C attached to plaintiffs' complaint which I set forth in a footnote.[2]

---

[1] Emphasis added.

[2] Exhibit "B" attached to complaint:

| Year | Net Earnings (after deducting reserves for additions, general improvements and depreciation). | Paid on Capital Stock | Paid on Class A Debentures | Net Earnings payable on Class B Debentures |
|---|---|---|---|---|
| 1924 | $ 197,883.57 | $ 125,000.00 | $ 30,000.00 | $ 42,883.57 |
| 1925 | 194,964.16 | 125,000.00 | 30,000.00 | 39,964.16 |
| 1926 | 192,795.67 | 125,000.00 | 30,000.00 | 37,795.67 |
| 1927 | 219,592.97 | 125,000.00 | 30,000.00 | 64,592.97 |
| 1928 | 229,278.75 | 125,000.00 | 30,000.00 | 74,278.75 |
| 1929 | 235,211.65 | 125,000.00 | 30,000.00 | 80,211.65 |
| 1930 | 245,491.57 | 125,000.00 | 30,000.00 | 90,491.57 |
| 1931 | 180,482.28 | 125,000.00 | 30,000.00 | 25,482.28 |
| 1935 | 171,161.66 | 125,000.00 | 30,000.00 | 16,161.66 |
| 1936 | 242,763.66 | 125,000.00 | 30,000.00 | 87,763.66 |
| 1937 | 308,110.51 | 125,000.00 | 30,000.00 | 153,110.51 |
| 1938 | 173,017.64 | 125,000.00 | 30,000.00 | 18,017.64 |
| 1939 | 243,505.48 | 125,000.00 | 30,000.00 | 88,505.48 |
| 1940 | 253,497.69 | 125,000.00 | 30,000.00 | 98,497.69 |
| 1941 | 301,165.54 | 125,000.00 | 30,000.00 | 146,165.54 |
| 1942 | 304,250.05 | 125,000.00 | 30,000.00 | 149,250.05 |
| 1943 | 591,446.00 | 125,000.00 | 30,000.00 | 436,446.00 |
| Totals. | $4,284,618.85 | $2,125,000.00 | $510,000.00 | $1,649,618.85 |

Exhibit "C" attached to complaint:

| Year | Net Earnings payable on Class B Debentures | Amounts Actually Paid on Class B Debentures | Net Earnings Withheld |
|---|---|---|---|
| 1924 | $ 42,883.57 | $ 35,000.00 | $ 7,883.57 |
| 1925 | 39,964.16 | 35,000.00 | 4,964.16 |
| 1926 | 37,795.67 | 35,000.00 | 2,795.67 |
| 1927 | 64,592.97 | 35,000.00 | 29,592.97 |
| 1928 | 74,278.75 | 70,000.00 | 4,278.75 |
| 1929 | 80,211.65 | 70,000.00 | 10,211.65 |
| 1930 | 90,491.57 | 70,000.00 | 20,491.57 |
| 1931 | 25,482.28 | | 25,482.28 |
| 1935 | 16,161.66 | | 16,161.66 |
| 1936 | 87,763.66 | 70,000.00 | 17,763.66 |
| 1937 | 153,110.51 | 105,000.00 | 48,110.51 |
| 1938 | 18,017.64 | | 18,017.64 |
| 1939 | 88,505.48 | 35,000.00 | 53,505.48 |
| 1940 | 98,497.69 | 35,000.00 | 63,497.69 |
| 1941 | 146,165.54 | 70,000.00 | 76,165.54 |
| 1942 | 149,250.05 | 70,000.00 | 79,250.05 |
| 1943 | 436,446.00 | 105,000.00 | 331,446.00 |
| Totals | $1,649,618.85 | $840,000.00 | $809,618.85 |

I see no basis for any suggestion that the directors are given any discretion in fixing the amount to be paid. The instrument expressly provides that it is to be computed by deducting from the net income the amount paid on the capital stock and the amount paid on the Class A Debentures. The resulting sum is to be paid to the Class B Debenture-holders. Nor are the directors given any discretion as to whether or not that sum is to be paid to the Class B Debenture-holders. The instrument declares that "the *amount payable will be* fixed and *declared* by the Board of Directors." Under such a provision, a resolution by the directors would be purely ministerial. Cf. Crocker v. Waltham Watch Co., 315 Mass. 397, 53 N.E.2d 230; Wood v. Lary, 47 Hun 550, appeal dismissed 124 N.Y. 83, 26 N.E. 338; Burk v. Ottawa Gas & Electric Co., 87 Kan. 6, 123 P. 857, Ann.Cas.1913D, 772. The obligation of defendant to make payment of the amounts withheld is therefore, I think, complete without any resolution.

My colleagues, however, make this suggestion: Plaintiffs are here suing for monies alleged by them to have been improperly withheld in the years 1924 to 1943, inclusive; since this suit was not brought until 1944, the plaintiffs have "by long acquiescence" accepted as correct an interpretation of the debenture provision which precludes payments not expressly declared by the directors to be due, i.e., makes a directors' resolution an indispensable condition precedent. Since here there is not (and my colleagues do not even intimate that there is) such delay as to bar the suit because of the statute of limitations or laches, my colleagues' suggestion comes to this: One who does not promptly sue on a written instrument must be presumed to have acquiesced in an interpretation of it unfavorable to him. I know of no authorities to sustain that position, and my colleagues cite none.

2. It follows, I think, that the doctrine of forum non conveniens has no proper application here.[3] For, in the circumstances, decision will involve no interference with the corporation's internal affairs. We said in Cohen v. American Window Glass Co., 2 Cir., 126 F.2d 111, 113, that the ruling in Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720, had been much weakened; and the facts here surely are far less strong than in the Rogers case,[4] for here the contractual duty of the defendant depends solely on a mathematical computation easily made.

Accordingly, the case boils down to one in which the need for examination of Wisconsin "law" is the only ground for sending the action to Wisconsin for trial. In other words, my colleagues are saying, in effect, that whenever a question of conflict of laws arises, a trial court has discretion to reject jurisdiction. I think that such rejection constitutes abuse of discretion. Especially is that true here where the plaintiff is a resident of New York; five of the defendant's six directors have their place of business in New York (at least two residing there and two in the adjoining state of New Jersey); two of the three members of the defendant's Executive Committee (which is authorized to do all acts that the Board of Directors may do during intervals between directors' meetings) have their place of business in New York; and defendant's vice-president, its secretary-treasurer and its assistant secretary-treasurer have their offices in New York.

It seems to me that the doctrine applied here by my colleagues might well be called "forum inconveniens."

3. There remains this argument, aside from the doctrine of forum non conveniens: The directors have failed to act, and, as they are not parties to the suit, the court cannot compel them to act. I cannot agree that that argument is apposite here. As already noted, on the facts, since the directors lack all discretion, their action would be purely ministerial. In such circumstances, their presence in court and a court order directing them to act would be the sheerest formalities. Certainly in a court of equity such action by the directors should not be a condition precedent to the corporation's liability. For equity considers that done which ought to be done and disregards formalities. These

---

[3] See Dainow, The Inappropriate Forum, 29 Ill.L.Rev. 867 (1935); Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col.L.Rev. 1 (1929); Foster, Place of Trial in Civil Actions, 43 Harv.L.Rev. 1217 (1930); 44 Harv. L.Rev. 41 (1930).

[4] Or the Cohen case which was stronger than the Rogers case. The Cohen case [126 F.2d 113], as we there stated, involved almost the most "complete interference with the internal affairs of a foreign corporation" imaginable.

782

maxims have been frequently applied in a variety of circumstances when dispensing with mere ministerial acts.[5] And even in actions "at law," conditions precedent of that character are disregarded on grounds of fairness.[6]

---

[5] See, e.g., Theater Realty Co. v. Aronberg-Fried Co., 8 Cir., 85 F.2d 383, 387; In re Greenberg, 2 Cir., 271 F. 258, 259; Mutual Life Ins. Co. v. Corodemos, D.C., 7 F.Supp. 349, 351; White v. White, 194 N.Y.S. 114, 117; Farley v. United States, D.C., 291 F. 238, 241; 30 C.J.S., Equity, §§ 106 and 107.

[6] Williston, Contracts (Rev. Ed. 1938) § 806 (pp. 2262, 2263); cf. § 615 (pp. 2312, 2313); Kulukundis Shipping Co. v. Amtorg Trading Corporation, 2 Cir., 126 F. 2d 978, 990, 991; Restatement of Contracts, § 265; Adamson v. Alexander Milburn Co., 2 Cir., 275 F. 148; Friede v. White Co., D.C., 244 F. 272, 274; 17 C. J.S., Contracts, § 495, p. 1009.